UNITED STATES of America, Appellee,

v.

Gerald John BERMINGHAM, Defendant–Appellant.

No. 1252, Docket 88–1025.

United States Court of Appeals, Second Circuit.

Submitted May 23, 1988.

Decided Aug. 11, 1988.

Stephen T. Rodriquez, Schenectady, N.Y., filed a brief, for defendant-appellant.

Frederick J. Scullin, Jr., U.S. Atty., David R. Homer, Asst. U.S. Atty., Albany, N.Y., filed a brief, for appellee.

Before NEWMAN and PRATT, Circuit Judges, and TELESCA, District Judge.*

JON O. NEWMAN, Circuit Judge:

This appeal presents an important issue in the administration of the new sentencing guidelines, an issue that will have major significance for all federal trial and appellate courts if the sentencing guidelines ultimately withstand constitutional challenge. *See United States v. Johnson*, 682 F.Supp. 1033 (W.D.Mo.1988), *cert. granted sub nom. United States v. Mistretta*, —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988). The issue is whether, and under what circumstances, a dispute as to which of two guideline ranges should apply to a defendant may be left unresolved where the sentence imposed falls within both the guideline range deemed applicable by the Government and a lower guideline range deemed applicable by the defendant. The issue arises on an appeal by Gerald Bermingham from a judgment of the District Court for the Northern District of New York (Thomas J. McAvoy, Judge). We conclude that the overlapping of the guideline ranges was designed to minimize the need to resolve disputes like the one presented on this appeal and that such disputes need not be resolved where the same sentence would have been imposed under either of the guideline ranges urged by the parties. However, such disputes must be resolved where the sentence was selected *because* it is at or near the low end of the guideline range urged by the Government and deemed applicable by the sentencing judge. Since we cannot be certain whether that occurred in this case, we remand for clarification.

The Sentencing Guidelines

In 1984, Congress initiated a fundamental change in the system for sentencing federal offenders. The Sentencing Reform Act of 1984, Pub.L. No. 98–473, Ch. II, 98 Stat. 1987, created the United States Sentencing Commission and gave it the responsibility to develop a set of sentencing guidelines to be used by district judges in sentencing federal offenders. *See* 28 U.S.C. §§ 991–998 (Supp. IV 1986). In place of the prior system under which district judges had virtually unfettered discretion to select any sentence from probation to the statutory maximum for the particular offense, except for those few offenses carrying mandatory minimum sentences, the guidelines establish a structure in which judges' sentencing discretion is substantially curtailed, though not eliminated. *See* United States Sentencing Commission, *Sentencing Guidelines and Policy Statements* (1987) (hereafter "Sentencing Guidelines"). The guidelines, as originally promul-

---

* The Honorable Michael A. Telesca of the United States District Court for the Western District of New York, sitting by designation.

ulgated on April 13, 1987, apply to offenses committed after November 1, 1987. *See* Sentencing Reform Act of 1984, *supra,* § 235(a)(1), 98 Stat. 2031, amended by Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728, and Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 101 Stat. 1266.

The guidelines establish a sentencing table of forty-three rows and six columns. Sentencing Guidelines at p. 5.2. The table is set out in figure 1. Each row corresponds to an "Offense Level," and each column to a "Criminal History Category." The offense level is determined by selecting a "Base Offense Level" specified for the type of conduct committed by the defendant and then adjusting this level, upwards and downwards, to reflect aggravating and mitigating circumstances, present

## SENTENCING TABLE
### Criminal History Category

| Offense Level | I<br>0 or 1 | II<br>2 or 3 | III<br>4, 5, 6 | IV<br>7, 8, 9 | V<br>10, 11, 12 | VI<br>13 or more |
|---|---|---|---|---|---|---|
| 1 | 0– 1 | 0– 2 | 0– 3 | 0– 4 | 0– 5 | 0– 6 |
| 2 | 0– 2 | 0– 3 | 0– 4 | 0– 5 | 0– 6 | 1– 7 |
| 3 | 0– 3 | 0– 4 | 0– 5 | 0– 6 | 2– 8 | 3– 9 |
| 4 | 0– 4 | 0– 5 | 0– 6 | 2– 8 | 4– 10 | 6– 12 |
| 5 | 0– 5 | 0– 6 | 1– 7 | 4– 10 | 6– 12 | 9– 15 |
| 6 | 0– 6 | 1– 7 | 2– 8 | 6– 12 | 9– 15 | 12– 18 |
| 7 | 1– 7 | 2– 8 | 4– 10 | 8– 14 | 12– 18 | 15– 21 |
| 8 | 2– 8 | 4– 10 | 6– 12 | 10– 16 | 15– 21 | 18– 24 |
| 9 | 4– 10 | 6– 12 | 8– 14 | 12– 18 | 18– 24 | 21– 27 |
| 10 | 6– 12 | 8– 14 | 10– 16 | 15– 21 | 21– 27 | 24– 30 |
| 11 | 8– 14 | 10– 16 | 12– 18 | 18– 24 | 24– 30 | 27– 33 |
| 12 | 10– 16 | 12– 18 | 15– 21 | 21– 27 | 27– 33 | 30– 37 |
| 13 | 12– 18 | 15– 21 | 18– 24 | 24– 30 | 30– 37 | 33– 41 |
| 14 | 15– 21 | 18– 24 | 21– 27 | 27– 33 | 33– 41 | 37– 46 |
| 15 | 18– 24 | 21– 27 | 24– 30 | 30– 37 | 37– 46 | 41– 51 |
| 16 | 21– 27 | 24– 30 | 27– 33 | 33– 41 | 41– 51 | 46– 57 |
| 17 | 24– 30 | 27– 33 | 30– 37 | 37– 46 | 46– 57 | 51– 63 |
| 18 | 27– 33 | 30– 37 | 33– 41 | 41– 51 | 51– 63 | 57– 71 |
| 19 | 30– 37 | 33– 41 | 37– 46 | 46– 57 | 57– 71 | 63– 78 |
| 20 | 33– 41 | 37– 46 | 41– 51 | 51– 63 | 63– 78 | 70– 87 |
| 21 | 37– 46 | 41– 51 | 46– 57 | 57– 71 | 70– 87 | 77– 96 |
| 22 | 41– 51 | 46– 57 | 51– 63 | 63– 78 | 77– 96 | 84–105 |
| 23 | 46– 57 | 51– 63 | 57– 71 | 70– 87 | 84–105 | 92–115 |
| 24 | 51– 63 | 57– 71 | 63– 78 | 77– 96 | 92–115 | 100–125 |
| 25 | 57– 71 | 63– 78 | 70– 87 | 84–105 | 100–125 | 110–137 |
| 26 | 63– 78 | 70– 87 | 78– 97 | 92–115 | 110–137 | 120–150 |
| 27 | 70– 87 | 78– 97 | 87–108 | 100–125 | 120–150 | 130–162 |
| 28 | 78– 97 | 87–108 | 97–121 | 110–137 | 130–162 | 140–175 |
| 29 | 87–108 | 97–121 | 108–135 | 121–151 | 140–175 | 151–188 |
| 30 | 97–121 | 108–135 | 121–151 | 135–168 | 151–188 | 168–210 |
| 31 | 108–135 | 121–151 | 135–168 | 151–188 | 168–210 | 188–235 |
| 32 | 121–151 | 135–168 | 151–188 | 168–210 | 188–235 | 210–262 |
| 33 | 135–168 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 |
| 34 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 |
| 35 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 |
| 36 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 |
| 37 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life |
| 38 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life | 360–life |
| 39 | 262–327 | 292–365 | 324–405 | 360–life | 360–life | 360–life |
| 40 | 292–365 | 324–405 | 360–life | 360–life | 360–life | 360–life |
| 41 | 324–405 | 360–life | 360–life | 360–life | 360–life | 360–life |
| 42 | 360–life | 360–life | 360–life | 360–life | 360–life | 360–life |
| 43 | life | life | life | life | life | life |

figure 1

in a defendant's case, for which precise offense level adjustments have been prescribed. The appropriate criminal history category is selected by assigning prescribed numbers of points to the defendant's prior convictions and selecting the criminal history category appropriate for the defendant's point total.

At the intersection of each of the forty-three offense levels and each of the six criminal history categories, the sentencing table prescribes a range of months. The sentencing judge is required to select a sentence within the applicable range, unless satisfied that the statutory grounds for making a "departure"—selecting a sentence above or below the guideline range—are met. *See* 18 U.S.C.A. § 3553(b) (West Supp.1988) (as amended by Sentencing Act of 1987, Pub.L. No. 100–182, § 3, 101 Stat. 1266). At the lower end of the sentencing table, the guideline ranges are six months. The ranges increase as the offense levels increase. At the higher end of the sentencing table, the guideline ranges are as much as eighty-one months. The top of any guideline range must not exceed the bottom by more than the greater of 25 percent or six months, unless the bottom is thirty years or more, in which event the top may be life imprisonment. 28 U.S.C.A. § 994(b)(2) (West Supp.1988).

A distinctive feature of the sentencing table, of special significance to the pending appeal, is that the guideline ranges overlap, both vertically as the offense levels become greater and horizontally as the criminal history categories become greater. To illustrate, in the *column* for criminal history category I, the range for offense level 16 is 21 to 27 months, the range for offense level 17 is 24 to 30 months, and the range for offense level 18 is 27 to 33 months. Thus, for a defendant in criminal history category I, a twenty-seven-month sentence could be imposed without a departure no matter which of these three offense levels was applicable. Similarly, in the *row* for

offense level 16, the range for criminal history category I is 21 to 27 months, the range for criminal history category II is 24 to 30 months, and the range for criminal history category III is 27 to 33 months. Thus, for a defendant with an offense level of 16, a twenty-seven-month sentence could be imposed without a departure no matter which of these three criminal history categories was applicable.

The extent of overlap is not uniform, though certain patterns are discernible. At offense levels from 13 to 37 in criminal history category I, the top of each range is the same as the bottom of the range for an offense level two levels higher.[1] That pattern of overlapping ranges for adjacent offense levels occurs in all criminal history categories, though the pattern begins and ends at offense levels slightly lower than those in criminal history category I as the criminal history category becomes greater. Thus, where this pattern exists, a sentence can fall within as many as three adjacent offense levels, though many sentences fall within only two adjacent offense levels. To illustrate with the example from the preceding paragraph, a twenty-seven-month sentence could be imposed for a defendant in criminal history category I whether offense level 16, 17, or 18 was applicable, but a twenty-eight-month sentence and a twenty-nine-month sentence could be imposed only if offense level 17 or 18 was applicable. At lower offense levels, a sentence may fall within as many as seven adjacent offense levels. For example, a two-month sentence could be imposed on a defendant in criminal history category I whether offense level 2, 3, 4, 5, 6, 7, or 8 was applicable.

Throughout the sentencing table, the ranges for every pair of adjacent *offense levels* (in each criminal history category) overlap, with the result that every sentence (other than a life sentence) falls within the ranges for at least two adjacent offense levels.

1. An exception to that pattern occurs at offense level 25, where the top of the range is one month higher than the bottom of the range for offense level 27.

The pattern of overlapping ranges among adjacent criminal history categories is similar though not identical to the pattern for adjacent offense levels. The top of the range for criminal history category I is the same as, or in a few instances higher than, the bottom of the range for criminal history category III at all levels. Thus, some sentences could be given no matter which of the first three criminal history categories applied, though most sentences would fall within only two of these categories. For criminal history categories II through VI, the top of a range at a particular offense level in one category is the same as or higher than the bottom of the range for a category two categories higher only at offense levels above 28.[2] Below this offense level, sentences fall within only two adjacent categories, except below offense level 9, where the extent of overlapping among criminal history categories increases.

Throughout the sentencing table, the ranges for every pair of adjacent *criminal history categories* (in each offense level) overlap with the result that almost every sentence falls within the ranges for at least two adjacent criminal history categories.[3]

With this understanding of the sentencing guidelines we turn to the facts of this case.

### Facts

Bermingham is a citizen of Canada who had been admitted to this country several years ago as a permanent resident alien. On November 10, 1987, he was deported to Canada. The following day, he was arrested after entering the United States near Champlain, New York. He was indicted for entering the United States after a previous deportation, in violation of 8 U.S.C. § 1326 (1982). He pled guilty to the charge. At the time the plea was entered, the Government stipulated that it would consent to a sentence at the bottom of the sentencing guideline range ultimately determined by the District Court to be applicable.

At the sentencing hearing, a dispute arose as to the proper interpretation of section 2L1.2 of the sentencing guidelines. In the version applicable to offenses committed on November 11, 1987, the date of Bermingham's offense, section 2L1.2 established a base offense level of 6 for unlawfully entering the United States. Sentencing Guidelines § 2L1.2(a) (amended Jan. 15, 1988). However, the guideline provided for an increase of two levels "if the defendant previously has unlawfully entered or remained in the United States." *Id.* § 2L1.2(b)(1). The Government contended that appellant was subject to the two-level increase on the theory that by staying in the United States after a 1985 narcotics conviction he had "unlawfully ... remained" within the meaning of section 2L1.2(b)(1). Appellant contended that the enhancement was applicable only to a person who had "previously" entered or remained unlawfully and that appellant was lawfully in the United States up to the moment of his deportation on November 10.[4] Judge McAvoy resolved the dispute in favor of the Government and therefore added a two-level increase to the base level

---

2. An exception to that pattern occurs in criminal history category III at offense level 29, where the top of the range is not as high as the bottom of the range in category V.

3. The top of the range for criminal history category III is the same as the bottom of the range for criminal history category IV at offense levels 11 through 22, and the same is true for criminal history categories IV and V at offense levels 9 through 20. Thus, where this pattern exists, a sentence at the top of the range of the lower category could also be imposed in the next higher category, but most sentences falling within these categories at these offense levels would be covered by only one criminal history category.

4. This dispute has been eliminated with respect to offenses committed after January 15, 1988, the effective date of the Commission's current version of section 2L1.2. *See* United States Sentencing Commission, *Guidelines Manual* § 2L1.2 (1988), amended by *Amendments to Sentencing Guidelines,* 53 Fed.Reg. 1286, 1291 (1988); 53 Fed.Reg. 15,530, 15,531 (1988). The revised guideline establishes a base level of 8 for any violation of 8 U.S.C. § 1326 and eliminates the two-level enhancement for previously unlawfully entering or remaining in the United States. In the Government's view, this change is a clarification of the Commission's prior guideline. Brief for Appellee at 5.

of 6. He then made a two-level reduction in recognition of the defendant's acceptance of responsibility, *see* Sentencing Guidelines § 3E1.1(a), returning the base level back to 6. Having determined that the defendant's prior record placed him in criminal history category V, *see* id., Chapter Four, the District Judge concluded that the applicable guideline range was 9 to 15 months. *See* Sentencing Table, figure 1 (intersection of offense level 6 and criminal history category V).

Judge McAvoy then selected the sentence. After noting, on the one hand, that the defendant had "a fairly long record of convictions and problems with the law," and, on the other hand, that he had been in this country a long time since his initial arrival as a youth, the District Judge imposed a sentence of nine months, plus a special assessment of $50. Judge McAvoy pointed out to the defendant that the sentence was "at the lower end" of the applicable guideline range "because of all the things we've just talked about· here," specifically mentioning defendant's long residence in the United States. However, the Judge also explained that he did not "depart and go below the guidelines" because "you really do have a long history and you've got to straighten yourself up."

The defendant, who is incarcerated, appeals on the ground that the two-level enhancement under section 2L1.2(b)(1) was improper.

### Discussion

We note at the outset that the nine-month sentence imposed by the District Judge falls within the ranges specified in the sentencing table for both offense level 4 and offense level 6. For criminal history category V, which indisputably applies to Bermingham, the range for offense level 4 is 4 to 10 months, and the range for offense level 6 is 9 to 15 months. That overlapping of the ranges for the offense level claimed to be applicable by the prosecution and the lower level claimed to be applicable by the defendant raises the issue of whether, and under what circumstances, a dispute as to which of two levels applies needs to be resolved where the same sentence may be imposed at either level. That issue is fundamental to the administration of the guidelines in the district courts and to appellate review of guideline sentences by the courts of appeals. It obviously has significance far beyond the immediate dispute between the parties in this case.

In resolving this broad issue we focus first on the structure of the sentencing table. The overlapping nature of guideline ranges throughout the table is perhaps its most salient feature. It is hard to think of any reason for the Sentencing Commission to have gone to such lengths to build overlapping into the table if it did not expect this feature to reduce the number of disputes that needed to be adjudicated in the application of the guidelines. It would surely have been possible to construct a table in which the top of the range for each offense level in a particular criminal history category was exactly one month less than the bottom of the range for the next higher offense level. Such a result would have reduced the size of each range but would have fully satisfied the statutory requirements, which specify the maximum size of each guideline range but set no minimum size. *See* 28 U.S.C.A. § 994(b)(2) (West Supp.1988).

In promulgating the guidelines, the Sentencing Commission gave clear indication that it had chosen the overlapping design of the sentencing table in order to minimize the number of disputes that needed to be resolved in the administration of the new system. In a "Policy Statement"[5] set forth in the introduction to the guidelines, the Commission states:

By overlapping the [offense] levels, the table should discourage unnecessary litigation. Both prosecutor and defendant

---

**5.** "Policy Statement" is a term of art in the guideline sentencing system. The Sentencing Reform Act of 1984 specifically instructs the Sentencing Commission to issue "general policy statements" concerning application of the guide-lines and other aspects of the new system. 28 U.S.C. § 994(a)(2). In issuing the guidelines, the Commission explicitly labeled selected portions of text as policy statements, including section 4 of the introduction.

will realize that the difference between one [offense] level and another will not necessarily make a difference in the sentence that the judge imposes.

Sentencing Guidelines, Chapter One, Part A, § 4(h), at p. 1.11.[6]

This basic point was repeated with respect to particular offenses for which the applicable offense level depends on precise gradations of the amount of money involved. For example, § 2B1.1(b)(1), applicable to numerous forms of theft, sets out a table with fourteen ranges of dollar amounts. Each dollar range requires an increase in the offense level one higher than the range below it. For example, the base offense level for theft, which is 4, is to be increased by three levels if the amount taken is $2,001 to $5,000, and is to be increased by four levels if the amount taken is $5,001 to $10,000. None of the dollar ranges overlaps with an adjacent range. In the commentary to § 2B1.1, the Commission noted that "[b]ecause of the structure of the Sentencing Table (§ 5A1.-1), subsection (b)(1) [of § 2B1.1] results in an overlapping range of enhancements based on the loss from the theft." Sentencing Guidelines § 2B1.1 commentary (codified in United States Sentencing Commission, *Guidelines Manual* p. 2.16 (1988) (hereafter "Guidelines Manual")). Thus, if the Government claimed that a defendant stole $5,100 and the defendant claimed that the amount was only $4,900, the sentence (assuming no other adjustments) could be

2, 3, 4, 5, 6, or 7 months under either contention, since the range (in criminal history category I) is 1 to 7 months for offense level 7, and 2 to 8 months for offense level 8.

Similarly, with respect to tax offenses, § 2T4.1 of the guidelines sets out a tax loss table specifying a separate offense level for each of thirteen ranges of the amounts of tax dollars lost to the United States. As with the property value table, the dollar ranges of the tax loss table do not overlap. In the commentary to § 2.T1.1, concerning tax evasion, the Commission states:

> The overlapping imprisonment ranges in the [Sentencing][7] Table are intended to minimize the significance of disputes. The consequence of an inexact estimate of the tax loss is never severe, even when the tax loss is near the boundary of a range. For example, although the difference between $39,999 and and $40,001 results in a change from level 10 to level 11, any sentence of eight to twelve months would be within the guidelines regardless of the offense level determination made by the court.

Guidelines Manual p. 2.140.

■ From the structure of the sentencing table and the Commission's explanation of the guidelines, we conclude that disputes about applicable guidelines need not be resolved where the sentence falls within either of two arguably applicable guideline ranges and the same sentence would have been imposed under either guideline range.

---

6. The Commission's observation has more relevance to the issue we are exploring on this appeal—whether disputes about overlapping guideline ranges need to be resolved by courts—than it does to the issue framed by the Commission—whether such disputes are worth litigating by the parties. The parties will be able to notice that two arguably applicable guideline ranges partially overlap, but they cannot tell until they learn the sentence whether the sentence falls within the area of overlap. Thus, the defendant contending for a guideline range lower than that urged by the prosecutor retains an incentive to press his claim; if he wins, he can then urge the judge to select a sentence at the low end of the range, a sentence that could not have been imposed (without a departure) if the higher range urged by the prosecutor were applicable. However, once the dispute has been identified by the parties, the *judge* can determine that

the dispute is not worth litigating in those instances where the judge has concluded that an appropriate sentence is one that falls within the area of overlap. Of course, if upon allocution defense counsel or the defendant persuades the judge that a sentence below the area of overlap is appropriate, the judge will have to adjudicate the dispute as to the applicable guideline range, unless the case is appropriate for a departure below the guideline range urged by the prosecutor.

7. The word "Tax" appears at this point in the quotation but, since imprisonment ranges are located in the Sentencing Table, not the Tax Table, it is obvious that the Commission intended to refer to the Sentencing Table. The Commission's example in the quoted excerpt makes this intent clear.

This conclusion should contribute substantially to the efficient administration of the guideline system. The guidelines introduce an extraordinary degree of complexity into the sentencing process (or at least require explicit and precise consideration of complex matters). Because so many factors relevant to the ultimate sentence are assigned numerical values, judges will now be obliged to determine with precision the existence and extent of numerous factors that previously were assessed only generally and sometimes not explicitly considered at all. For example, the applicable guideline range now depends on which of fourteen dollar ranges applies to the amount of money stolen, Sentencing Guidelines § 2B1.1(b)(1), which of twelve dollar ranges applies to the amount of money obtained by fraud, *id.* § 2F1.1(b)(1), and which of seven dollar ranges applies to the amount of money lost in a burglary, *id.* § 2B2.1(b)(2). Numerical values are assigned to injuries to victims of various offenses, depending upon whether the injury is in the categories of "Bodily Injury," "Serious Bodily Injury," or "Permanent or Life–Threatening Bodily Injury," *id.* §§ 2A2.1(b)(3), § 2A2.2(b)(3), 2B3.2(b)(3), 2E2.1(b)(2). One-level distinctions in the applicable guideline range occur depending on whether the defendant's role in the offense was "an organizer" of a criminal activity, "a manager" of an "extensive" criminal activity, or an "organizer" of an "extensive" criminal activity. *Id.* § 3B1.1. It makes little sense to hold, and review the outcomes of, all the hearings necessary to make these precise determinations in those instances where the sentence is unaffected by the outcome.

In reaching our conclusion that guideline disputes may be left unresolved where the same sentence would have been imposed under either of two overlapping guideline ranges, we have considered decisions on somewhat similar issues arising in related contexts. Though these decisions illuminate our issue, they do not precisely resolve it. No other context presents a guideline system (a) that uses a sentencing table carefully constructed to contain a large number of fairly narrow sentencing ranges, each of which overlaps to some extent with at least one other range, and (b) that would require precise adjudication of fine distinctions to determine the applicability of adjacent guideline ranges. Nevertheless, at least three other contexts deserve consideration.

The first and most relevant context concerns sentences imposed by a judge or jury unaware of the applicable statutory sentencing range. In *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), the Supreme Court considered a forty-year sentence imposed by a state court jury that had been instructed that the applicable habitual criminal statute required a forty-year mandatory minimum sentence. After the sentence had been imposed, a state appellate court determined in another case that the forty-year mandatory minimum provision was unconstitutional, thereby subjecting defendants in Hicks' circumstances to a ten-year mandatory minimum sentence. Nevertheless, on direct review of Hicks' conviction, the state appellate court upheld the forty-year sentence on the ground that a jury properly instructed that the mandatory minimum sentence was ten years could still have imposed a forty-year sentence, since the maximum sentence allowable was life. Not surprisingly, the Supreme Court reversed. The Court ruled that in Hicks' case the state appellate court's "frail conjecture" that the jurors *"might"* have imposed a forty-year sentence, even if they had known the mandatory minimum was only ten years, was arbitrary and a denial of due process. *Id.* at 346, 100 S.Ct. at 2229 (emphasis in original).

The problem of sentences imposed without knowledge of the correct sentence range has also been confronted by the Fifth and Tenth Circuits on far less dramatic facts. In *Hill v. Estelle,* 653 F.2d 202 (5th Cir. Unit A), *cert. denied,* 454 U.S. 1036, 102 S.Ct. 577, 70 L.Ed.2d 481 (1981), a defendant was sentenced under a newly enacted state law establishing a mandatory minimum sentence of five years. Prior law, which remained applicable to Hill, had set the mandatory minimum sentence at two years. Both laws set the maximum

sentence at life. The sentencing court believed that the range of permissible sentences was five years to life. It selected a sentence of five to twenty-five years. The Fifth Circuit rejected Hill's claim that he was entitled to be resentenced by a judge aware of the applicable two-year minimum. The Court noted first that the minimum of the indeterminate sentence had no bearing on the defendant's parole eligibility, which was determined on the basis of the maximum sentence imposed. *Id.* at 204. The Court then rejected Hill's argument that he was entitled to have a judge exercise his discretion with a correct understanding of the range of allowable sentences. The Court noted that the sentence was within the "middle range" under both the prior and the new statute and concluded, "It cannot be said that the different punishment ranges substantially limited the trial judge's sentencing discretion such as to prejudicially affect Hill." *Id.* at 205. The Court observed that the case would be different if the sentence were at or near the minimum under the new statute because Hill could then have argued that his sentence might have been at or near the lower minimum of the prior law, which was still applicable. *Id.*

In *Shaw v. Johnson*, 786 F.2d 993 (10th Cir.), *cert. denied*, 479 U.S. 843, 107 S.Ct. 154, 93 L.Ed.2d 95 (1986), the defendant challenged a sentence of life imprisonment that had been imposed by an Oklahoma jury. Shaw argued that he was entitled to resentencing because the jury had been instructed that the applicable sentencing range was twenty years to life, when in fact the proper range was ten years to life. The Tenth Circuit agreed that the instruction was erroneous but concluded that "it is unlikely that the sentencing error had any effect on Shaw's sentence." *Id.* at 997. The court reasoned that because the jury had selected the maximum sentence allowable, *i.e.*, life, "[i]t is pure speculation that the jury would have imposed something less than life imprisonment had it been properly instructed that the minimum possible sentence was ten years, and not twenty." *Id.* at 998.

These decisions indicate that unawareness of applicable sentencing ranges can, on extreme facts, result in a sentence so arbitrary as to deny due process, but that sentencing that may reasonably be concluded to have been unaffected by such unawareness may stand. This approach is consistent with our view that a sentence imposed either with unawareness of the correct guideline range or without resolving a dispute concerning the applicability of overlapping guideline ranges may stand where the judge indicates that the same sentence would have been imposed in any event.

Related issues arising in two other contexts reenforce that conclusion. Numerous cases have confronted a situation where a sentence is imposed in the face of a factual assertion alleged by the defendant to be false. If the sentencing judge states that the challenged fact will be disregarded, the sentence is not disturbed. *See, e.g., United States v. Romano*, 825 F.2d 725, 730–31 (2d Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988); *United States v. Navaro*, 774 F.2d 565, 566 (2d Cir.1985) (per curiam); Fed.R.Crim.P. 32(c)(3)(D). The same result occurs when the fact is challenged after imposition of sentence, and the judge states retrospectively that the same sentence would have been imposed regardless of the challenged fact. *See, e.g., Reynolds v. United States*, 528 F.2d 461, 462 (6th Cir.1976) (per curiam). Some decisions have gone further, upholding sentences in the face of a challenged factual assertion because the reviewing court could reasonably conclude, even in the absence of the sentencing judge's express disclaimer of reliance, that the challenged fact was not significant to the trial court's sentencing decision. *See, e.g., United States v. Golomb*, 811 F.2d 787, 790–91 (2d Cir.1987); *Knight v. Warden*, 583 F.2d 1071, 1072 (8th Cir.1978) (per curiam); *Herron v. United States*, 551 F.2d 62, 64 (5th Cir.1977) (per curiam).

The third context worth considering concerns the so-called "concurrent sentence" doctrine. It has frequently been held that a reviewing court need not determine the validity of a conviction on one or more

counts for which a sentence was imposed that is concurrent with the sentence on a count for which conviction has been upheld. *See, e.g., Barnes v. United States,* 412 U.S. 837, 848 n. 16, 93 S.Ct. 2357, 2364 n. 16, 37 L.Ed.2d 380 (1973); *United States v. Vega,* 589 F.2d 1147, 1155 (2d Cir.1978); *United States v. Mejias,* 552 F.2d 435, 444–45 (2d Cir.), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977). That doctrine has recently been eroded because of heightened concern about the collateral consequences that flow from convictions on multiple counts, even where the aggregate sentence is unaffected. *See United States v. Vargas,* 615 F.2d 952 (2d Cir.1980). Nevertheless, the numerous cases applying the doctrine, and even cases like *Vargas,* which limit it, have expressed no concern that review of the convictions on all counts is required simply because the sentencing judge might have imposed a lesser sentence if faced with convictions on fewer counts.

Based on our analysis of the sentencing guidelines and the foregoing case law, we have concluded that a dispute as to which of two overlapping guideline ranges is applicable need not be resolved where the sentence imposed would have been selected under either guideline range. What requires further consideration is the determination of whether a sentence *is* unaffected by the selection of an applicable guideline range where the sentence falls within the overlapping portions of two guideline ranges. To say that a judge would have imposed the same sentence even if a different, though overlapping, guideline range applied might suggest that in some cases the judge had a sentence in mind before endeavoring to select the applicable guideline. For example, a judge reading a presentence report might come to the tentative conclusion that a twelve-month sentence was appropriate, then work through the calculations necessary to determine the applicable guideline range, and then be pleasantly surprised to learn that offense level 13 and criminal history category I are applicable, specifying a range of 12 to 18 months. If the defendant then contends that the offense level should be 12 (10 to 16 months), 11 (8 to 14 months), or 10 (6 to 12 months), the judge could state with confidence that the twelve-month sentence would be imposed in any event, since that sentence was in the judge's mind before any guideline was selected.

That thought process, however, arguably runs counter to the sequence of steps contemplated by the Commission in its instructions for applying the guidelines. Sentencing Guidelines § 1B1.1. A judge following those instructions would first make the determinations necessary to select the applicable guideline range, then consider pertinent sentencing requirements and options, then consider "Special Offender Characteristics," "Departures," and pertinent policy statements and commentary of the Commission, and only then select a sentence. *Id.* § 1B1.1(g), (h), (i). Despite the sequence contemplated by the Commission, it is unrealistic to suppose that a judge reading a presentence report will not in many instances form a tentative view as to an appropriate sentence. Of course, that sentence may not be imposed until the calculations mandated by the Guidelines have been performed and defense counsel and the defendant have had an opportunity to address the Court. But we see no basis for complaint if a judge ultimately imposes a sentence tentatively selected during earlier consideration of the matter and then adheres to that sentence in the face of a defendant's unresolved claim that a lower, though overlapping, guideline range is applicable.

Nor is there a basis for complaint if the judge, without forming a tentative view of the sentence, works through the guideline calculations, selects the applicable guideline range, encounters the defendant's claim that a lower, though overlapping, guideline range is applicable, and then, without resolving the claim, selects a sentence that falls within the overlapping portions of the two ranges. As long as the sentencing judge is satisfied that the same sentence would have been imposed no matter which of the two guideline ranges applies, the sentence should stand. And a reviewing court similarly need not select

between the two arguably applicable guideline ranges if it is satisfied that the same sentence would have been imposed under either guideline range.

Situations may arise, however, where a sentencing judge determines that the appropriate sentence is whatever number of months are at or near the bottom of the applicable guideline range. In such situations, it obviously matters which guideline range is applicable, and a judge entertaining such a view could not conscientiously be satisfied that the same sentence would have been imposed simply because it happens to fall at or near the high end of a lower, overlapping guideline range. In such circumstances, any dispute as to the applicable guideline range must be adjudicated in the trial court, and that adjudication, if challenged, must be determined on appeal.

In some cases, the sentencing judge will make clear on the record that the same sentence would have been imposed despite the defendant's claim that a lower, overlapping guideline range is applicable. In other cases, the sentencing judge will make clear the contrary view that the sentence was selected because it bore a relationship to the low end of the guideline range that the judge considered to be applicable. Once alerted to this aspect of the guideline sentencing system, district judges will likely express their views with precision whenever a defendant contends that a lower, overlapping guideline range is applicable. If the judge's intention is not clear, the appellate court will face the choice of either adjudicating a guideline application dispute that might in fact be of no consequence or remanding so that the judge's intention may be clarified. Articulation of the judge's intentions at the time of sentencing will contribute significantly to the efficient functioning of the guideline system. *See* 18 U.S.C. § 3553(c) (Supp. IV 1986) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence...."). It will be helpful if prosecutors and probation officers alert district judges to this matter in all cases where a sentence falls within the overlapping area of disputed guideline ranges.

With these considerations in mind, we turn to an assessment of Judge McAvoy's intentions in the pending case. Preliminarily, we note that when Bermingham entered his guilty plea, the Government stipulated that it would "consent" to a sentence at the low point of the applicable guideline range. It does not appear that a sentence at that low point was a true sentence bargain, agreed upon between the prosecutor and the defendant. *See* Fed.R. Crim.P. 11(e)(1)(C). No such agreement was tendered for the Court's approval, nor did the Court inform the defendant that any such agreement would be reflected in the sentence. *See* Fed.R.Crim.P. 11(e)(2), (3). Presumably, the Government's "consent" meant no more than that the prosecutor at sentencing would not express any opposition to a sentence at the low point of the applicable guideline range.

At sentencing, Judge McAvoy made two statements that bear on our inquiry. First, in selecting the nine-month sentence, the Judge emphasized the defendant's "fairly long record of convictions." This suggests that he thought nine months would be appropriate even if offense level 4 applied with its range of 4 to 10 months. However, Judge McAvoy pointed out to the defendant after imposing the sentence that the sentence he had selected was "at the lower end" of the applicable guideline "because of all the things we've just talked about here," specifically mentioning the defendant's long residence in the United States. This remark could be interpreted to mean either that the Judge was selecting nine months because it was at the low point of the applicable guideline range or that he was simply noting that the sentence he thought was appropriate happened to fall at that point. Though we think it likely that the District Judge would have imposed a nine-month sentence whether offense level 6 or offense level 4 applied, we cannot, in light of the record, reach that conclusion with sufficient confidence to act upon it. We therefore face the choice of either resolving the dispute as to the applicable guideline or remanding for clarifica-

tion of the District Judge's intention regarding the appropriateness of a nine-month sentence. Since the guideline at issue has been amended by the Sentencing Commission, eliminating the recurrence of the dispute on the merits, we deem it appropriate to remand for clarification of the Judge's intent without resolving a dispute that may never require adjudication.

Accordingly, the case is remanded to the District Court for clarification in light of this opinion. In the event that Judge McAvoy indicates that he would not impose a nine-month sentence if offense level 4 applied, the defendant may renew his appeal simply by filing a new notice of appeal within ten days of the Judge's ruling on remand and need not file additional briefs. In the event of such an appeal, this panel will retain jurisdiction.

Remanded.