891 F.2d 287
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Boarhanullah SHERDIL, Defendant-Appellant.
 No. 88-5121.
 United States Court of Appeals, Fourth Circuit.
 Argued: Sept. 15, 1989.
Decided: Nov. 24, 1989.
 
 Russell C. Williams, for appellant.
 William Graham Otis, Assistant United States Attorney (Henry E. Hudson, United States Attorney, Emmett L. Fleming, Jr., Special Assistant United States Attorney, on brief), for appellee.
 Before MURNAGHAN, SPROUSE and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Two cab drivers sought to resolve a personal dispute by engaging in fisticuffs on the military installation at Fort Belvoir, Virginia. One of them, the defendant, Boarhanullah Sherdil, escalated the confrontation by employing weighted gloves and a knife, seriously injuring his opponent, Hamidullah Noor. The defendant now appeals his subsequent federal conviction and sentence for assault, alleging insufficient evidence and errors in the use of the new federal sentencing guidelines. The evidence is, however, clearly sufficient to sustain the defendant's conviction.
 
 
 2
 The defendant was involved in a dispute with another cab driver in the cab line at Washington, D.C. National Airport. The incident commenced with the defendant and Noor bumping their cabs into each other, and developed into insults and threats directed at each other.
 
 
 3
 The defendant, much disturbed by the altercation, returned home and convinced his roommate, John Keller, to teach him some Kung Fu and to assist him in purchasing a knife to prepare for a fight with Noor, who evidently was a reputable fighter, with the nickname "Rambo." The defendant also purchased a pair of weight-lifting gloves with metal inserts at the top of the hand.
 
 
 4
 On November 25, 1987 the defendant again encountered Noor in the National Airport cab line. According to Noor, Sherdil approached him and said, "I told you I'm going to get you one day; that day is today." Noor stated he could not leave because he had a passenger; the defendant replied by offering to pay the fare and instructing Noor to follow him. Noor complied.
 
 
 5
 The two cab drivers drove to a secluded spot on the military reservation at Fort Belvoir, Virginia. The defendant, who was wearing the metal-loaded weight-lifting gloves, got out of his car, approached Noor's car, and demanded that Noor get out. Noor did so, and the defendant punched him twice. Noor hit the defendant back, and then wrestled him to the ground. As Noor tried to get up, the defendant stabbed him repeatedly with his newly-acquired knife. Noor managed to escape and ran away, bleeding profusely. He was later picked up by two passersby and taken to a hospital.
 
 
 6
 The defendant drove back to his apartment, where he told Keller he had been in a fight. After advising the defendant to wash the blood out of his clothes, Keller removed the weights from the defendant's gloves. The two then decided to return to the scene of the fight, to check on Noor's condition. They were arrested by the military police soon after they arrived on the scene.
 
 
 7
 Dr. Albert Fleury, a plastic surgeon, treated Noor in the emergency room at the hospital. Dr. Fleury later testified that Noor had a seven centimeter laceration beginning at the tracheus on the right side and extending down across the jaw, to the edge of the mandible through a neck gland. The doctor further testified that Noor had a second laceration, beginning at the midforehead, extending thirteen centimeters back into the scalp. There was also a third laceration on the left side of Noor's face, approximately two and a half centimeters in length. The doctor described the cuts as deep and serious; specifically, he testified that, "It was a very deep laceration. It went through the subcutaneous tissue and into the underlying parotid gland and just very narrowly missed the facial nerve."
 
 
 8
 Sherdil was charged with assault with intent to commit murder, in violation of 18 U.S.C. § 113(a), and aggravated assault, in violation of 18 U.S.C. § 113(f). He was tried before a jury in the United States District Court for the Eastern District of Virginia (Cacheris, J., presiding) and convicted of aggravated assault. (He was found not guilty of assault with intent to commit murder.)
 
 
 9
 Sherdil was sentenced under the sentencing guidelines to a term of fifty-five months imprisonment, and to make restitution to the victim in the amount of $2,094.80.
 
 
 10
 On appeal, the defendant alleges that the evidence adduced at trial did not prove "unlawfulness" beyond a reasonable doubt because it established only that the victim's injuries were the aftermath of a fight that he agreed to have with the defendant.
 
 
 11
 The defendant's contention, however, is generally devoid of merit. True, a jury could have found on this record that the combat was a mutually arranged affray. But it also could have found the opposite. Noor's testimony, if believed, demonstrates that the incident was not mutually arranged, that he proceeded with the defendant unwillingly, that he only defended himself, and that he tried to disengage at the first opportunity once the fight commenced.
 
 
 12
 Furthermore, it is undisputed that there was no agreement, in any event, to engage in combat involving weapons. The defendant's introduction of a knife and weighted gloves into the affray escalated the confrontation beyond even the mutual agreement envisioned by his argument.
 
 
 13
 Turning to a different subject, the defendant charges that the federal sentencing guidelines violate his right to due process. Specifically he contends that the guidelines impinge on a perceived right to "individualized" sentencing under the law.
 
 
 14
 In United States v. Mistretta, 488 U.S. ---, 109 S.Ct. 647 (1989), the Supreme Court determined that the sentencing guidelines do not violate the separation of powers doctrine. In important dicta, the Court indicated similar reasoning would prevail under a due process analysis. All seven circuits which have considered the issue, including the Fourth Circuit, have rejected due process challenges to the guidelines. See United States v. Bolding, 876 F.2d 21 (4th Cir.1989). See also, e.g., United States v. Pinto, 875 F.2d 143 (7th Cir.1989).
 
 
 15
 Recognizing that our consideration of the issue is foreclosed by Bolding, supra, a due process challenge to the guidelines is, moreover, patently inadequate. As the Mistretta Court observed, Congress is fully capable of determining the appropriate scope of judicial discretion. If, for example, Congress may constitutionally enact a mandatory sentence for a given offense, logic alone dictates that Congress may statutorily direct or constrain the exercise of judicial discretion within a previously determined sentencing range.
 
 
 16
 The defendant's attempt to fashion a constitutional "right" to individualized sentencing is bereft of support outside the limited domain of capital punishment. Some circuits have restricted a court from "automatically" and repeatedly sentencing criminals to the maximum end of a sentencing range on the sole ground that the court finds the subject crime heinous in and of itself (e.g., draft evasion and draft card burning). The Supreme Court has not broadly construed such reasoning into a broadly based constitutional control of a sentencing judge's discretion. Absent such a constitutional imperative, we perceive no judicial prerogative superior to the dictates of the legislature.
 
 
 17
 Finally, the question is posed by Sherdil whether the record supports the district court's finding that Noor suffered permanent or life threatening injury, thus ascribing an additional guideline sentencing point, and consequent additional sentence exposure, for the defendant. Sherdil asserted that only serious injuries were shown. Testimony by Dr. Fleury (who provided the only medical testimony) indicated serious injuries, and further indicated that the injuries would have been life threatening, had the defendant's knife slash extended a further two centimeters. His testimony included no explicit statement that the actual injuries inflicted were either permanent or life threatening.
 
 
 18
 However, the serious injuries which admittedly occurred called for a sentencing range of 46-57 months, while a permanent or life threatening injury mandated a range of 51-63 months. The actual sentence was 55 months, a term falling within either range. United States v. Bermingham, 855 F.2d 925 (2d Cir.1988). Cf. United States v. White, et al., 875 F.2d 427, 432 (4th Cir.1989). Any argument that the district judge had any inclination or intention to fix a sentencing term less than 55 months flies in the face of the district judge's reliance on the fact that Noor had permanent scarring. In that respect, the district judge may well have been stating the obvious about the wounds available to him for inspection in open court. They were manifest and substantial and occasioned profuse bleeding when inflicted. The choice of a sentence falling within both the serious range and the life threatening range was amply justified on the facts presented by the record.
 
 The judgment is
 
 19
 AFFIRMED.