**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Billy Joe DILLON, Jr. and Gregory Michael Jackson, Defendants–Appellants.**

Nos. 88–3505, 89–1422.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1989.

Decided June 20, 1990.

Byron G. Cudmore, Asst. U.S. Atty., Springfield, Ill., for the U.S.

Michael B. Metnick, Metnick & Barewin, Springfield, Ill., for Billy J. Dillon, Jr.

Billy J. Dillon, Jr., pro se.

William J. Billeaud, St. Louis, Mo., Richard Frazier, for Gregory M. Jackson.

Before RIPPLE, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Billy Joe Dillon, Jr., entered a plea of guilty to conspiracy to distribute approximately ten ounces of cocaine in violation of 21 U.S.C. § 846. Shortly thereafter, Dillon's co-defendant, Gregory Michael Jackson, entered a plea of guilty to one count of conspiracy to distribute approximately ten ounces of cocaine in violation of 21 U.S.C. § 846 and to two counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). The only issues before this court concern the sentences of Dillon and Jackson imposed under the United States Sentencing Commission Guidelines.

The sentencing judge, using the Guidelines, determined Dillon's offense level to be 20. This included an increase of two points for his role as a leader, organizer, manager or supervisor in the conspiracy. It also included a decrease of two points for accepting responsibility for his crime. Dillon was assessed three criminal history points which placed him in Criminal History Category II. One point was assessed for his 1983 guilty plea to a charge of driving under the influence of alcohol and two points were added for a 1985 bench warrant which was outstanding at the time of his arrest for this drug offense. The district judge imposed a 40–month term of imprisonment for Dillon which is within the range of 37–46 months established in the Guidelines.

Jackson's offense level also was determined by the district judge to be 20. This included an increase of two points for obstruction of justice and a decrease of two points for acceptance of responsibility. Jackson was assessed four criminal history points which placed him in Criminal History Category III. In determining his criminal history points, one point was assessed for each of the following criminal convictions: (i) a 1978 guilty plea for theft under

$150.00; (ii) a 1979 guilty plea to resisting arrest and battery; (iii) a 1980 guilty plea for driving while intoxicated; and (iv) a 1986 guilty plea for driving under the influence. The sentencing judge imposed a 42–month term of imprisonment for Jackson which is within the range of 41–51 months set forth in the Guidelines.

## I. DILLON

Dillon makes two arguments regarding his sentence. First, he asserts that it was error to add two points to his criminal history category for an outstanding bench warrant because the bench warrant did not constitute a "criminal justice sentence." Second, Dillon argues the sentencing judge erred by not sufficiently considering mitigating factors when determining the exact sentence within the sentencing range. We will address each argument in turn.

### A. *The Outstanding Bench Warrant as a Criminal Justice Sentence*

Section 4A1.1(d) of the Guidelines provides for two criminal history points to be added "if the defendant committed the instant offense (i.e., any relevant conduct) while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." A "criminal justice sentence" is defined in Application Note 4 to § 4A1.1 as a sentence countable under § 4A1.2. Under § 4A1.2(c), all felony offenses are counted as are all misdemeanor and petty offenses except for those specifically excluded.

Almost five years prior to his sentencing in this case, Dillon pleaded guilty in an Illinois circuit court to driving under the influence (he was assessed one criminal history point for this DUI conviction). As part of his sentence of one year of court supervision, he was ordered to pay a fine of $650.00. He also signed a document which required him to appear in court one year later on December 6, 1984 to show that he had paid the fine in full or show why he should not be held in contempt of court for failure to pay the fine. Dillon failed to pay the fine or appear in court one year later.

Subsequently, on February 11, 1985, a bench warrant was issued by the Illinois state court for his arrest. Judge Mills, the sentencing judge in this case, adopted the recommendation in the presentence report and added two points because the state court bench warrant for Dillon was outstanding at the time he committed the federal offense for which he was being sentenced.

Under Illinois law, the imposition of a sentence of court supervision is for a fixed term. *See* Ill.Ann.Stat. ch. 38 ¶ 1005–6–3.1 (Smith–Hurd Supp.1989). The state can file a petition alleging a violation of a condition of supervision and the court may then issue a notice, summons, or warrant which will toll the period of supervision. *Id.* ¶ 1005–6–4(a). However, this petition must be filed by the state before the period of supervision expires. *Id.; cf. In re D.P.,* 165 Ill.App.3d 346, 116 Ill.Dec. 442, 519 N.E.2d 32 (1988) (trial court lacked jurisdiction to revoke a minor's probation after fixed period of probation had expired where no petition to revoke had been filed before the probation term ended even though a bench warrant had been issued). Here, the state did not take any action prior to the expiration of the court supervision. The state could have filed a petition on the day the fine was not paid and the period of court supervision could have been tolled. The state did not, however, and the sentence of court supervision had expired. The bench warrant was issued more than two months after the expiration of the court supervision sentence and did not operate to extend the supervision period. As a result, Dillon was not under a "criminal justice sentence" for the driving under the influence offense when the federal drug offense was committed.

■ While fugitive status under an outstanding warrant may constitute a factor authorizing departure, the existence of an outstanding warrant is not the equivalent of a "criminal justice sentence" under § 4A1.1(d). Thus, the district court incorrectly added two points to Dillon's criminal history category.

■ As a result of the mistake, Dillon was placed in Criminal History Category II (with a range of 37–46 months at offense level 20) instead of Criminal History Category I (with a range of 33–41 months at offense level 20). Because the 40–month sentence that was imposed is within the overlap of the two ranges, however, we will not automatically remand for resentencing.

In *United States v. Bermingham,* 855 F.2d 925, 926 (2d Cir.1988), the Second Circuit held that the overlapping of the Guidelines ranges was designed to reduce the need for appellate courts to resolve disputes where the same sentence would have been imposed under either of the ranges urged by the parties. The court quoted the Sentencing Commission Policy Statement regarding the sentencing table which states that the overlapping of the ranges was intended to "discourage unnecessary litigation." *Id.* at 930–31 (quoting Guidelines, Chapter One, Part A, Introduction 4(h)). The court focused on the structure of the table and stated:

> It is hard to think of any reason for the Sentencing Commission to have gone to such lengths to build overlapping into the table if it did not expect this feature to reduce the number of disputes that needed to be adjudicated in the application of the guidelines. It would surely have been possible to construct a table in which the top of the range for each offense level in a particular criminal history category was exactly one month less than the bottom of the range for the next higher offense level.

*Id.* at 930. The court concluded that when the same sentence would have been imposed under either of two overlapping Guidelines ranges, the technical dispute over offense levels may be left unresolved. *Id.* at 932. *See also United States v. Williams,* 891 F.2d 921 (D.C.Cir.1989). Although *Bermingham* addresses the overlap of ranges when the dispute is over different offense levels, the same rationale applies when the dispute is over overlapping ranges produced by different criminal history categories. *See United States v. Turner,* 881 F.2d 684, 688 (9th Cir.), *cert.*

*denied,* —— U.S. ——, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989).

We agree with the analysis in *Bermingham* and adopt its approach to the effect of overlapping Guideline ranges. Thus, we will not resolve disputes such as this one if it is reasonable to conclude that the same sentence would have been imposed irrespective of the outcome of the dispute.

█ Applying this general rule to the case at hand, we note that Dillon could have received the same sentence under the range under either Criminal History Category I or II. The sentence imposed by the sentencing judge was in the middle of the range for Criminal History Category II. For the same sentence to be imposed under Criminal History Category I, it would be at the upper end of that range. Failure to pay the fine would be a proper consideration in deciding where within the range to sentence the defendant even though the resulting bench warrant was not countable to add criminal history points. Guidelines § 1B1.4 reads, "In determining the sentence to impose within the guideline range, ... the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See,* 18 U.S.C. § 3661." The commentary to this section adds that "[a] court is not precluded from considering information that the guidelines do not take into account." These provisions of the Guidelines are pertinent here. The district judge indicated at the sentencing hearing that he found Dillon's conduct of not paying the fine and costs for the driving under the influence conviction to be objectionable. When the judge erroneously added criminal history points for the existence of the outstanding bench warrant resulting from Dillon's failure to pay his fine, he said:

> I find it very difficult to believe and understand why this [failure to pay the fine and costs] would—would take place, but nevertheless, it has, and this certainly does not state well for Mr. Dillon's attitude toward the criminal justice system, and I think that this is undoubtedly what the sentence—sentencing commis-

sion has in mind when it gives these levels and adds these factors.

Although he misapplied this factor in adding criminal history points, the sentencing judge left no doubt that he weighed failure to pay the fine adversely against Dillon. Because the conduct which resulted in the issuance of the bench warrant could have been considered in the sentencing judge's determination to establish where in the range to sentence Dillon, it is reasonable to conclude that the conduct would have resulted in a sentence at the upper end of the range of Category I—if as we have indicated it could not have been used to add criminal history points. Thus, we hold that the sentence imposed would have been the same if Dillon had been placed in Criminal History Category I rather than Criminal History Category II.

### B. *Consideration of Mitigating Factors*

█ Dillon makes one other argument which warrants little comment. He claims that his sentence is improper because the sentencing judge considered only his role in the conspiracy and did not consider mitigating factors relating to his family ties. He claims that instead of being sentenced in the middle of the appropriate range he should have been sentenced at the lower end.

Dillon's argument does not get off the ground. A brief review of the sentencing transcript refutes the premise of his argument. The sentencing judge clearly did not ignore the mitigating circumstances when deciding on the specific sentence for Dillon. Indeed, the sentencing transcript reveals the following statements by the sentencing judge:

> Now, I'm sorry for your three little kids, and I'm sorry for [your wife] Gerry, and I'm sorry for your parents, your inlaws, your family, but they cannot be the primary concern here. You have made the bed and you're going to sleep in, and part of that results on direct harm to them, but you should have thought about that first, Mr. Dillon, before you got involved in this nefarious business.
>
> . . . .

[Your attorney] Mr. Metnick argues primarily from the emotional standpoint with relation to the family for the minimum, and that is a very sustainable position, and I do feel great compassion for your family. Unfortunately, it's always the ones that suffer who are the ones that are not involved in the decision to commit the errors.

. . . .

In fact, quite frankly I was thinking in terms of the top areas, but after going through all of the factual backdrop and all of the contents of the report, it seems to me that you fall into the center, and I'm going to take that into serious consideration.

Thus, this argument by Dillon has no merit and we affirm his sentence.

## II. JACKSON

### A. *Upward Adjustment for Obstruction of Justice*

■ Shortly after Jackson was arrested, he provided a false name to a government agent concerning his source of the cocaine. Because of this conduct, two points were added to his base offense level for obstruction of justice pursuant to Guidelines § 3C1.1. Jackson argues that it was clearly erroneous to find that he obstructed justice because the following morning he recanted and provided the government with the true source of the cocaine.

■ Jackson's argument has no merit. The false name which he gave to government officials caused the government to expend resources by pursuing the false lead. Thus, it was not clearly erroneous for the sentencing judge to determine that this was an obstruction of justice. Furthermore, Jackson was credited for his sub-

sequent assistance to the government by having two points subtracted from his base offense level under § 3E1.1 of the Guidelines for acceptance of responsibility.[1] He is not entitled to a double benefit for this action.

### B. *Addition of One Point to Criminal History Category for the Offense of Resisting Arrest and Battery*

■ One criminal history point was added for Jackson because of his plea of guilty in 1979 to resisting arrest and battery to a police officer. Jackson argues that under § 4A1.2(c)(1) of the Guidelines, this offense is similar to the exempted offenses enumerated therein. Specifically, he argues that this prior offense is similar to the exempted offenses of "disorderly conduct or disturbing the peace" and "hindering or failure to obey a police officer."[2] While the exempted offenses listed by Jackson are similar to the resisting arrest aspect of his prior offense, none of the exempted offenses is similar to the battery aspect of Jackson's prior conviction. Thus, the exemption is not applicable and Jackson was correctly assessed one criminal history point for this prior offense.

### C. *Assessment of Jackson's Role in the Offense*

■ Jackson argues that it was clearly erroneous for the district court to find that he did not play a mitigating role in the offense which would have warranted a decrease in the offense level under Guidelines § 3B1.2. However, the record contains evidence which clearly indicates that Jackson was an important player in the drug conspiracy. He made phone calls and recruit-

---

**1.** We note that Application Note 4 to § 3E1.1, as applicable to Jackson, stated that an adjustment under § 3E1.1 is not warranted where the defendant obstructs the administration of justice as provided in § 3C1.1. However, the government does not contest the subtraction of two points for Jackson's subsequent cooperation, and, since application notes are not binding, *see United States v. Pinto,* 875 F.2d 143, 144 (7th Cir.1989), the Guidelines were not incorrectly applied. We question the wisdom of a provision that totally removes any incentive for a

defendant to recant and make amends for obstructing justice. Apparently the Commission was troubled by this Application Note as well because it has been amended to permit both adjustments in extraordinary cases. *See* United States Sentencing Commission, *Guidelines Manual,* app. C, amendment 258 (Nov. 1989).

**2.** Jackson also could have included the enumerated offense of "resisting arrest." Guidelines § 4A1.2(c)(1).

ed others into the conspiracy. He provided the money to purchase the cocaine and was the person who actually distributed the cocaine to an undercover agent. It was not error for the sentencing judge to find that Jackson did not play a mitigating role in the offense.

### III. CONCLUSION

For the foregoing reasons, the sentences of both Dillon and Jackson are AFFIRMED.