956 F.2d 1168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luis Anthony CHAMPAGNE, Jr., aka Louis Anthony Champagne,
Jr., Defendant-Appellant.
 No. 91-50277.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 6, 1992.*
Decided March 6, 1992.
 
 Before ALARCON, BEEZER and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Louis Champagne appeals from the sentence of 27 months imprisonment imposed following his guilty plea to three drug-related counts. He contends that his base offense level should not have been increased during sentencing because the district court erred in (1) calculating the quantity of cocaine seized and (2) finding he acted as an organizer.
 
 I.
 
 3
 On April 9, 1990, Champagne sent an Express Mail package containing 25.58 grams of cocaine secreted in a hollowed-out candle to Mark Burton's and Leslie Champagne's residence in Springfield, Missouri. Pursuant to a valid search warrant, codefendants' house was searched, uncovering, inter alia, the above referenced package, two purchaser's receipts for $1,000 cashier's checks payable to Louis Champagne from Mark Burton, three hollowed-out candles, two customer receipts from Express Mail shipping labels, a two-gram scale with traces of cocaine, and letters from "Louis" to codefendant Leslie Champagne, one describing the costs and profits associated with narcotics transactions and a second discussing the use of candles and procurement of narcotics.
 
 
 4
 The probation office concluded in the presentence report from this evidence that the 25.58 grams of cocaine seized, which would have resulted in a base offense level of 14, did not reflect the scale of the offense. It also concluded that the three seized hollowed-out candles were sent by Champagne on three different occasions. Based upon the weight of the three previous packages, which was recorded on the recovered shipping labels, the report concluded that a similar amount of cocaine would have been shipped in each package as that seized.
 
 
 5
 Pursuant to U.S.S.G. § 2D1.4 (Application Note 2), the presentence report approximated the capacity of the three hollowed-out candles as well as the amount of cocaine seized to arrive at a base offense level. The report concluded that over 100 grams would have been shipped (25.58 grams x four separate shipments). However, in order to alleviate any unjustifiable burden on Champagne, the report concluded that only 50-100 grams were shipped. A base offense level of 16 was applied.
 
 
 6
 Additionally, the presentence report concluded that Champagne was an organizer, pursuant to U.S.S.G. § 3B1.1, and increased his offense level by two levels to 18. A two-level reduction of the offense level was then applied for Champagne's acceptance of responsibility.
 
 
 7
 The Guideline sentencing range for level 16, when combined with Champagne's criminal history category of III, resulted in a sentencing range of 27 to 33 months. At the sentencing hearing, the district court adopted the findings and determinations of the presentence report and imposed a 27-month prison term and three years of supervised release.
 
 II.
 
 8
 Champagne argues that the district court erroneously considered the capacity of the three hollowed-out candles found at his codefendants' residence in calculating his base-offense level. He argues that only the amount of cocaine seized, 25.58 grams, should be considered in determining his base-offense level because there was insufficient evidence for the court to make a finding that he conspired to possess with the intent to distribute in excess of that amount. We disagree.
 
 
 9
 Under the sentencing guidelines as they relate to most narcotics cases, the base-offense level is predicated in part on the amount of drugs involved. U.S.S.G. § 2D1.1. Pursuant to U.S.S.G. § 2D1.4 (Application Note 2),
 
 
 10
 [w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant.
 
 
 11
 We review the district court's factual determinations made in the course of applying the Guidelines for clear error. United States v. Wills, 881 F.2d 823, 825 (9th Cir.1989). In addition to the hollowed-out candle containing 25.58 grams of cocaine which Champagne admitted sending, the district court also relied on evidence obtained during the search of the codefendants' Missouri residence in concluding that the amount seized did not reflect the scale of the offense. Two customer receipts from Express Mail not only indicate that Champagne sent two packages to codefendant Burton in February and March 1990, but that they were of a weight comparable to that of the package of cocaine sent by Champagne on April 9, 1990.[1] Moreover, the record shows that five days after Burton received the March package, he sent Champagne a $1,000 cashier's check. The similar weight of all three packages and the transmission of the cashier's check at about the same time as the March shipment supports an inference that Champagne began sending shipments of cocaine to his codefendants prior to April 9, 1990.
 
 
 12
 The letters which were written between Champagne and his sister, codefendant Leslie Champagne, further support the inference that Champagne was engaged in a conspiracy to distribute cocaine with the codefendants. In one letter to his sister, in which he related his plans for upcoming drug transactions, Champagne stated that "UPS would probably be a good idea for candles." In a letter to Champagne, Leslie Champagne stated "We can keep this up for several weeks" and "I'd like to correspond twice a week for three or four weeks, then quit for a while (to be safe)." These comments tend to show that the conspiracy contemplated more than a single shipment from Champagne to his codefendants. The district court did not clearly err in considering the capacity of the additional candles in determining the scale of the offense.
 
 III.
 
 13
 Champagne also argues that Application Note 2 of section 2D1.4 is limited to offenses involving the manufacture of controlled substances. This contention is without merit. In United States v. Hill, No. 89-10643, slip op. 16159, 16175 (9th Cir. Dec. 16, 1991), we applied U.S.S.G. § 2D1.4 to approximate the quantity of drugs a defendant attempted to purchase in a reverse sting operation in which the defendant paid an undercover DEA agent $70,000 for an unspecified amount of cocaine.
 
 IV.
 
 14
 Champagne argues that his base offense level should not have been increased to level 16 because there was insufficient evidence to find that he acted as an organizer. We do not reach this issue because the base for level 14 and level 16 overlap. "The overlapping of the Sentencing Guideline ranges was designed to minimize the need to resolve disputes where the same sentence would have been imposed under either of the sentencing Guideline ranges urged by the parties." United States v. Turner, 881 F.2d 684, 688 (9th Cir.), cert. denied, 493 U.S. 871, 110 S.Ct. 199 (1989) (citing United States v. Bermingham, 855 F.2d 925, 926 (2d Cir.1988).
 
 
 15
 The district court calculated the base offense level of 16, after finding that Champagne was an organizer. Assuming arguendo, that this finding was erroneous, the offense level would have been 14. The sentencing range for level 14 is 21 to 27 months. Since the 27 months of imprisonment to which Champagne was sentenced is within the permissible guidelines range for level 14, "a determination of which precise guideline range is applicable is unnecessary because the defendant cannot demonstrate prejudice." United States v. Turner, 881 F.2d at 688-89.
 
 AFFIRMED
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The presentence report states that three customer receipts from Express Mail supported the conclusion that Champagne sent three previous shipments of cocaine secreted in hollowed-out candles. However, since one of the labels upon which the report relies was from the package Champagne admitted sending in April 1990, the report should have concluded that only two packages were previously sent. This does not, however, constitute prejudicial error because Champagne's base offense level was based on a finding that he distributed between 50-100 grams of cocaine. If he sent only a total of three instead of four candles containing 25.58 grams of cocaine each, the total quantity sent still would be within the level 16 50-100 grams range