178 F.3d 603
 Willie HORNE, Plaintiff-Appellant,
v.
Thomas A. COUGHLIN, III, Commissioner, New York State
Department of Correctional Services; Philip Coombe, former
Superintendent, Eastern Correctional Facility; Donald
Selsky, Coordinator, Inmate Discipline; Arthur Kracke,
Lieutenant, Eastern Correctional Facility; and Joseph A.
Demskie, Captain, Sullivan Correctional Facility, in their
individual and official capacities, Defendants-Appellees.
 No. 301, Docket 97-2047.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 17, 1997.
Decided May 21, 1999.
 
 Deborah Schneer, Poughkeepsie, N.Y. (Kenneth R. Stephens, Prisoners' Legal Services of New York, Poughkeepsie, N.Y., Of Counsel), for Plaintiff-Appellant.
 Katharine Demgen, New York, N.Y. (Dennis C. Vacco, Attorney General of the State of New York, John W. McConnell, Deputy Solicitor General, Robert A. Forte and Belina Anderson, Assistant Attorneys General, New York, N.Y., Of Counsel), for Defendants-Appellees.
 Before: CARDAMONE, WALKER, and LEVAL, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 On consideration of the application for rehearing and rehearing in banc, the question was raised whether, under County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), we should have first declared whether plaintiff stated a claim for violation of a constitutional right, and only if he did so, decided whether defendants were entitled to qualified immunity because the right was not clearly established at the time of the alleged violation. A footnote in Sacramento describes this sequence of decisions as "[n]ormally" the "better approach." Id. at 1714 n. 5. We nonetheless believe, like the Eleventh Circuit in Santamorena v. Georgia Military College, 147 F.3d 1337, 1343-44 (11th Cir.1998), that courts may, in appropriate cases, go directly to the qualified immunity issue. See also Stuto v. Fleishman, 164 F.3d 820, 825 (2d Cir.1999)(describing "preference" of Sacramento as "nonmandatory"); Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir.1998) (describing "preference"). This is an appropriate case.
 
 
 2
 At the outset, we share the Eleventh Circuit's doubt that the Supreme Court intended its hortatory language in Sacramento to bind lower courts. See Santamorena, 147 F.3d at 1343 n. 14. The suggested approach would require courts to declare new constitutional rights in dictum--where the declaration of the new constitutional right has no influence on the result of the case. If we believed that a given allegation stated a constitutional claim but that this claim was not clearly established at the time the defendant acted, the defendant would be entitled to have the case dismissed regardless of our conclusion that a constitutional right was violated. The finding of the constitutional right would be dictum, not essential to our holding that defendants had qualified immunity, and not binding in future cases. See Seminole Tribe v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821) (Marshall, C.J.) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.").
 
 
 3
 As is often the case with dictum, our declaration of a new constitutional right would run a high risk of error. Where an asserted right is neither clearly established nor likely to be asserted again against the same defendant, the defendant will have little incentive to contest the merits of the constitutional right vigorously, knowing that qualified immunity provides a complete defense. A court may therefore be swayed by the plaintiff's vigorous assertion of a constitutional right where a more vigorous defense might have showed that the claim is unwarranted. Adjudication in such a case is unreliable because the presentation lacks the "concrete adverseness ... upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (discussing standing requirement). More broadly, in addressing a constitutional question whose answer would have no effect on the outcome of the case, we would have violated the "fundamental and longstanding principle of judicial restraint [that] requires ... courts [to] avoid reaching constitutional questions in advance of the necessity of deciding them." Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988). The Court's use of cautious language in the Sacramento footnote may reflect its awareness of these dangers.
 
 
 4
 Furthermore, it is worth noting that the Supreme Court in Sacramento reached the conclusion that there was no constitutional right. That finding was the holding; the Court directed dismissal on that basis. The same was true in Conn. v. Gabbert, --- U.S. ----, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). In contrast, had the Court validated the asserted new constitutional right, that would have been dictum; it would have had no effect on the disposition, as the defendant would have been entitled to qualified immunity because the right was not yet clearly established. Perhaps what the court means in Sacramento is that where it is clear the new constitutional right claimed by the plaintiff does not exist, the court should dismiss on that basis rather than leave the law unclear. Such a practice would not draw the lower courts into declaring new constitutional rights in dictum.
 
 
 5
 Needless to say, if the Supreme Court's discussion in Sacramento is a holding that requires adjudication of the claimed constitutional right, we are bound to follow it even if we think it unwise. And even if it is not a holding and therefore has no binding force, we would nonetheless give it great deference out of respect for the Supreme Court if we understood it as a firm recommendation that the procedure should always be followed.
 
 
 6
 But the discussion in Sacramento is not a holding. The Supreme Court would have decided the case before it the same way regardless whether a rule requires courts always to consider the constitutional question before reaching the issue of immunity.
 
 
 7
 Nor does the Sacramento discussion, regardless how characterized, purport to establish a rigid rule. The Court spoke merely of a "better approach," as opposed to the alternative of "always" first deciding qualified immunity. See Sacramento, 118 S.Ct. at 1714 n. 5. Clearly the discussion leaves room for discretion, based on appropriate considerations.[1]
 
 
 8
 Furthermore, the Court placed the tentatively worded suggestion in a footnote--scarcely the placement one would expect had the Court intended to command the lower courts to abandon a widespread practice and a generally recognized precept of avoiding unnecessary constitutional adjudication.[2] In joining the Court's opinion, Justice Breyer stated that the Court's precedents "should not be read to deny lower courts the flexibility, in appropriate cases, to decide § 1983 claims on the basis of qualified immunity, and thereby avoid wrestling with constitutional issues that are either difficult or poorly presented." Id. at 1723 (Breyer, J., concurring). We understand the passage in the Sacramento opinion as a suggestion that the lower courts should be mindful lest the repeated failure to consider constitutional issues allow "standards of official conduct ... to remain uncertain," without clarifying adjudication. Id. at 1714 n. 5. In this case, we considered it appropriate to abstain from the thorny constitutional issue and to proceed directly to the clear issue of immunity.
 
 
 9
 The key motivating factor in Sacramento is not applicable to this case. The constitutional question raised here is the validity of a prison regulation affecting the conduct of disciplinary proceedings. There is no reason to believe that the questioned regulation will repeatedly, or over a substantial time, escape judicial review by reason of qualified immunity. Whenever the regulation is applied, adequate opportunity will arise to challenge it in federal court.[3] Because qualified immunity is not a defense in injunctive actions, a prisoner can seek injunctive relief while the disciplinary hearing is pending, or indeed at any time while serving the punishment arising out of the hearing. Such a suit would require adjudication of the constitutional question that we do not answer here. Accordingly, the danger of sustained uncertainty that concerned the Court in Sacramento is not present in this case;[4] in contrast, the traditional arguments for restraint operate with full force.
 
 
 10
 Two further questions warrant consideration. First, the Supreme Court receives careful and thorough briefing in virtually all its cases. The same is not always true in the lower courts. The poor quality of the briefing in a particular case may make it all the more perilous for a court to render an advisory ruling asserting (or denying) an important constitutional right. Second, the federal courts are heavily burdened by their caseload. Litigants often face substantial delays; many courts routinely deny oral argument; and many cases are decided by summary order because the courts haven't time to make a carefully crafted full opinion in each case. See Chief Justice William H. Rehnquist, The 1997 Year-End Report on the Federal Judiciary, The Third Branch, Jan. 1998, at 2 (stating that the "upward spiral" of a "large and expanding workload" threatens to "outstrip [the] resources" of the federal judiciary). The question arises whether limited, burdened judicial resources should properly be diverted from cases that require adjudication to difficult and time-consuming advisory opinions on questions that will have no effect on who wins or loses the litigation.
 
 
 11
 For the foregoing reasons,[5] we reaffirm our decision to rely on the lack of clearly established law to dismiss Horne's action on grounds of qualified immunity.
 
 CARDAMONE, Circuit Judge, dissenting:
 
 12
 I respectfully dissent. Because I find my colleagues' reasons inadequate to justify a departure from the general rule articulated by the Supreme Court in County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998) (Sacramento ), I would determine the existence of the constitutional right alleged by Horne before asking whether it was clearly established at the time of defendants' challenged conduct.
 
 A. The Decision in Sacramento
 
 13
 As a preliminary matter, it may be helpful to examine the Sacramento decision in some detail. There, the Supreme Court faced the question "whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." 118 S.Ct. at 1711. The district court had granted summary judgment to the defendant police officer solely on the basis of qualified immunity, reasoning that even assuming a substantive due process violation had taken place, the law on this point was not clearly established at the time of the events in question. See id. at 1712.
 
 
 14
 In footnote five of the majority opinion, authored by Justice Souter, the Supreme Court rejected the district court's approach, explaining:
 
 
 15
 We do not analyze this case in a similar fashion because, as we have held, the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.
 
 
 16
 Id. at 1714 n. 5 (citing Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)).
 
 
 17
 The Court also rejected the suggestion of Justice Stevens, concurring in the judgment, "that the rule of Siegert should not apply where, as here, the constitutional question presented 'is both difficult and unresolved.' " Id. (quoting id. at 1723). The Court gave two reasons for rejecting this suggestion. First, it reasoned that the usual rule of avoiding unnecessary adjudication of constitutional issues was inapposite, since even a finding of qualified immunity with respect to an alleged constitutional violation "requires some determination about the state of constitutional law at the time the officer acted." Id.
 
 
 18
 Second, the Court emphasized that were courts to adhere to the policy of avoidance by deciding cases on qualified immunity grounds, "standards of official conduct would tend to remain uncertain, to the detriment both of officials and individuals." Id. The Court explained that "escape from uncertainty would require the issue to arise in a suit to enjoin future conduct," because the defense of qualified immunity does not apply to suits for injunctive relief; but it declined to rely on this possibility, stating that this "avenue[ ] would not necessarily be open, and therefore the better approach is to determine the right before determining whether it was previously established with clarity." Id. Accordingly, Sacramento went on to assess whether the constitutional right asserted by the plaintiff actually existed, although it ultimately answered that inquiry in the negative. Id. at 1720-21.
 
 
 19
 In sum, I understand footnote five in Sacramento to hold as follows: A federal court faced with a suit alleging the deprivation of a constitutional right under 42 U.S.C. § 1983 should ordinarily decide whether the constitutional right alleged by the plaintiff actually exists, even where the defense of qualified immunity might provide an alternative ground for decision. Although this principle need not govern in each and every case, it is undoubtedly the "[n]ormal[ ]" rule and the "better approach" to constitutional adjudication in § 1983 litigation. Moreover, neither the policy of avoidance of constitutional questions nor the remote possibility of clarifying the law in later suits for injunctive relief justifies a departure from this general principle.
 
 B. The Majority's Reading of Sacramento
 
 20
 My colleagues attempt to avoid this directive on grounds that "the discussion in Sacramento is not a holding," because it was not necessary for the Court to announce such a broad principle in order to reach its ultimate disposition of the constitutional question. To the contrary, it was necessary for the Sacramento Court to articulate some rationale for departing from the district court's approach, and instead reaching the constitutional question. Even if the principle articulated in footnote five was broader than absolutely necessary to reach the Court's result, a majority of the Court joined in Justice Souter's opinion (including footnote five), and such fact alone requires deference to the footnote five discussion as a strong indicator of the Supreme Court's view on this point of law.[1]
 
 
 21
 Indeed, the Supreme Court has since reiterated the principle articulated in footnote five, with explicit citation to Sacramento, see Conn v. Gabbert, --- U.S. ----, ----, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399, ---- (1999) (majority opinion per Rehnquist, C.J., for eight Justices) ("Thus a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all."); and five panels of this Circuit have acknowledged this general rule, see Powell v. Schriver, 175 F.3d 107 at 110-11 (2d Cir.1999); Stuto v. Fleishman, 164 F.3d 820, 825 (2d Cir.1999); Greenwood v. New York, 163 F.3d 119, 123-24 (2d Cir.1998); Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir.1998); Medeiros v. O'Connell, 150 F.3d 164, 169 (2d Cir.1998). This should come as no surprise, since the general rule already had gained widespread acceptance even before its adoption in Sacramento. See generally Karen M. Blum, Section 1983: Qualified Immunity, in Litigation, at 407, 430-55 (PLI Litig. & Admin. Practice Course Handbook Series No. 595, 1998) (collecting cases).
 
 
 22
 My colleagues also express "doubt that the Supreme Court intended its hortatory language in Sacramento to bind lower courts," reasoning that this "approach would require courts to declare new constitutional rights in dictum," without benefit of full adversarial debate and contrary to the policy of avoidance of constitutional questions. Yet, as discussed above, the Supreme Court explicitly rejected the policy of avoidance within this context, and instead stressed the need for clarity in the law as the overriding factor. To the extent that the Supreme Court's approach requires lower courts to adjudicate constitutional questions that could otherwise be avoided by deciding cases based on the absence of clearly established law, such adjudication cannot readily be dismissed as "dictum" unless one is also prepared to characterize as "dictum" the High Court's holding regarding the constitutional question in Sacramento itself. To suggest seriously that the Supreme Court did not mean what it said either in footnote five or on the merits of Sacramento would render the decision superfluous.
 
 
 23
 My colleagues attempt to sidestep this obvious pitfall by suggesting that the Sacramento discussion was intended to permit courts to proceed to the constitutional question only "where it is clear the new constitutional right claimed by the plaintiff does not exist." In such a case, as in Sacramento, a court could dismiss on the basis that the right does not exist without asking in addition whether the right was clearly established. As a result, resolution of the constitutional question would be necessary to the disposition of the case (and therefore not dictum), unlike the situation where a court finds a constitutional right exists and then dismisses on the ground that the right was not clearly established.
 
 
 24
 But this interpretation surely misses the mark. Had the Court intended to limit its preference for reaching the constitutional question to those situations where the asserted right does not exist, one would have expected it to say so, either in Sacramento itself or in Conn. See Wyoming v. Houghton, --- U.S. ----, ----, 119 S.Ct. 1297, 1301, 143 L.Ed.2d 408, ---- (1999) ("[I]f the rule of law that [our precedent] announced were limited [as respondent asserts], one would have expected that substantial limitation to be expressed.").
 
 
 25
 Moreover, such a reading of Sacramento is flatly inconsistent with the one we recently adopted in Powell and Greenwood, where we found that the plaintiffs' asserted privacy and liberty interests were constitutionally protected, but went on to conclude that these interests were not clearly established at the time of the events in question. Powell, 175 F.3d 107 at 111-14 (recognizing prisoner's privacy interest in medical confidentiality of transsexual status); Greenwood, 163 F.3d at 124 (recognizing psychiatrist's liberty interest arising from government defamation combined with deprivation of property interest in clinical privileges).
 
 C. The Policy of Avoidance
 
 26
 To the extent my colleagues' reading rests on the policy of avoidance, the key consideration in applying that policy is not whether resolution of the constitutional question would dispose of the case without further inquiry, but rather whether resolution of the question is necessary at all in light of other acceptable grounds for decision. See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.") (citing Murray v. The Schooner Charming Betsy, 6 U.S. (2 Cranch) 64, 118, 2 L.Ed. 208 (1804) (Marshall, C.J.) ("[A]n act of congress ought never to be construed to violate the law of nations, if any other possible construction remains.")).
 
 
 27
 Under this latter inquiry, resolution of the constitutional question presented by a § 1983 action is equally unnecessary whether or not a court finds that the asserted right exists, since in any case the court could simply assume arguendo that the right exists but still dismiss on grounds that the right was not clearly established. Further, the danger of judicial error that motivates the policy of avoidance persists in equal magnitude where the right is found not to exist, unless perhaps one assumes that judges are less likely to err in denying (as opposed to recognizing) the existence of new constitutional rights.
 
 
 28
 Consequently, I would defer to the Sacramento Court's statement, reiterated by the Conn Court, that the better approach in § 1983 litigation is first to decide whether the asserted constitutional right exists and only then to determine whether the right was clearly established. Although this principle need not govern in every case, the Supreme Court's formulation of the principle as a general rule requires, at the very least, that a court articulate some persuasive reason to justify its departure from this approach in a given case.
 
 
 29
 Persuasiveness (like beauty) may at times lie in the eye of the beholder, but it does not take the genius of a logician like Bertrand Russell to perceive the weaknesses of the majority's reliance on reasons that Sacramento itself rejected (e.g., the policy of avoidance, the remote possibility of suits for injunctive relief), as well as on even less compelling reasons of public policy (e.g., "the poor quality of briefing" and overflowing dockets in the lower federal courts). Moreover, I have little sympathy for the rationale the majority ultimately proffers: that the federal courts simply "haven't time to make a carefully crafted full opinion in each case." Such rationale is more of an excuse and less of a good reason, and a very poor excuse, indeed, for circumventing the fundamental "duty of the judicial department, to say what the law is." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) (Marshall, C.J.).
 
 D. Application to the Present Appeal
 
 30
 Finally, turning to the case at hand, no persuasive reason has been advanced to depart from the general rule articulated in Sacramento. For their part, my colleagues cite the decision of the Eleventh Circuit in Santamorena v. Georgia Military College, 147 F.3d 1337, 1343-44 (11th Cir.1998), which departed from the Sacramento rule and dismissed a § 1983 action on qualified immunity grounds. But Santamorena explicitly rested its departure on the fact that the case presented "a perplexing question" of substantive due process not easily amenable to adjudication. Id. at 1343; see id. at 1341 (question presented was "whether a voluntary, instead of an involuntary, custodial arrangement between the State and a citizen could give rise to a special relationship, and thus a constitutional duty").
 
 
 31
 Here, by contrast, Horne presents a more straightforward question, namely, the form of assistance that procedural due process guarantees a mentally retarded person in defending a prison disciplinary proceeding. Unlike the question of substantive due process in Santamorena, for which "the cited precedents gave much too little guidance," id. at 1342, the procedural question plaintiff asks us to decide implicates a well developed body of case law, see Horne v. Coughlin, 155 F.3d 26, 33-34 (2d Cir.1998) (Cardamone, J., dissenting).
 
 
 32
 The majority also attempts to justify its departure from the Sacramento rule by noting the possibility that future suits challenging the relevant prison regulations may seek injunctive relief while the disciplinary hearing is pending or during the consequent punishment, thereby eliminating the qualified immunity hurdle and forcing the courts to address the merits of the constitutional question. But the prospect of future suits for injunctive relief is no less remote in this context than it was in Sacramento, where the Court expressly declined to rely on such a possibility, 118 S.Ct. at 1714 n. 5. In the present context, requiring such a suit as a precondition to reaching the precise constitutional question raised by Horne would impose the burden on a mentally retarded prisoner, who already believes he is being denied constitutionally required assistance, to bring a § 1983 action within a limited period of time specifically requesting injunctive relief.
 
 
 33
 Moreover, on the facts of this case, Horne was kept in solitary confinement pending his rehearing, leaving only 13 days of confinement subsequent to the rehearing during which he could have brought the suit for injunctive relief suggested by the majority. Here, the majority's approach threatens to undermine the integrity of the state administrative process by encouraging prisoners to bring federal suit while state disciplinary proceedings are still pending. More fundamentally, to turn a deaf ear at this point because Horne did not bring a suit for injunctive relief is simply unfair to Horne, a person who we do not think imbibed Wright and Miller's Federal Practice and Procedure with his mother's milk, but who nonetheless has just as much interest in the articulation of his constitutional rights as any plaintiff seeking declaratory relief from the federal courts.
 
 
 34
 The majority's approach also does a disservice to future plaintiffs and to the public insofar as it undermines the duty of the courts "to explicate and give force to the values embodied in ... the Constitution," Owen M. Fiss, Against Settlement, 93 Yale L.J. 1073, 1085 (1984), thereby "encourag[ing] repeat[ed] unlawful conduct without accountability" on the part of state actors, John M.M. Greabe, Mirabile Dictum!: The Case for "Unnecessary" Constitutional Rulings in Civil Rights Damages Actions, 74 Notre Dame L.Rev. 403, 407 (1999). Even assuming that injunctive relief might be available after termination of punishment in certain circumstances, this "avenue[ ] would not necessarily be open, and therefore the better approach is to determine the right before determining whether it was previously established with clarity." Sacramento, 118 S.Ct. at 1714 n. 5.
 
 E. Conclusion
 
 35
 Accordingly, I would determine the existence of the constitutional right alleged by Horne before asking whether that right was clearly established. Further, for the reasons stated in my original dissent, I would find that defendants are not entitled to qualified immunity and would therefore reach the merits of Horne's § 1983 due process claim.
 
 
 
 [1]
 While Judge Cardamone dissents from our decision to refrain from offering our view of the constitutional issue and to rely on qualified immunity in this case, he nonetheless asserts that Sacramento "leaves lower courts free [to rely on qualified immunity without more] where they can articulate a persuasive reason for doing so." See Dissent at ---- n. 1
 
 
 [2]
 See John M.M. Greabe, Mirabile Dictum!: The Case for "Unnecessary" Constitutional Rulings in Civil Rights Damages Actions, 74 Notre Dame L.Rev. 403, 410 n. 35 (1999) (noting that in a 1997 survey of decisions awarding immunity where no precedent prohibited the conduct at issue, 65% of the decisions did not purport to decide the constitutional merits)
 
 
 [3]
 Different considerations may arise where plaintiffs are prevented by law from bringing claims for injunction in the federal courts. See, Patsy v. Board of Regents, 457 U.S. 496, 503, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) ("[T]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights ....") (internal quotations and citations omitted)
 
 
 [4]
 We cannot agree with Judge Cardamone's assertion that "the prospect of future suits for injunctive relief is no less remote in this context than it was in Sacramento." Dissent at ----. Sacramento concerned the constitutionality of a high speed auto chase. Those harmed in such a chase are not forewarned and have no opportunity to sue to enjoin it. This case involves the constitutionality of a regulation governing procedures in prison disciplinary proceedings. Every adversely affected person can sue for an injunction to bar application of the regulation, or to prohibit punishment meted out in proceedings that relied on the questioned regulation. Suit for an injunction might be brought at any time during the service of any punishment. There is no reasonable likelihood the question will escape adjudication
 
 
 [5]
 Judge Cardamone finally complains that we are "unfair[ly]" "turn[ing] a deaf ear" on Horne's plight. Dissent at ----. This emotional plea overlooks the fact that, one way or the other, Horne will emerge the loser of his lawsuit. If we follow the Sacramento suggestion, this will yield one of two results. We might rule that the procedure Horne challenges does not violate his constitutional rights. That would be of no benefit to him. Or we might state, in non-binding dictum, that we believe the procedure does infringe the constitution, but then go on to rule that, by reason of the defendants' qualified immunity, Horne's case must nonetheless be dismissed. Once again, no benefit to Horne
 The Supreme Court never suggested in Sacramento that immediate broaching of the constitutional question was a matter of fairness to the plaintiff, and we fail to see how this consideration plays any role, since the defendant's entitlement to qualified immunity guarantees plaintiff's defeat.
 
 
 [1]
 Although a number of Justices authored separate opinions in Sacramento, a majority joined in Justice Souter's opinion for the Court, and all but Justice Stevens would have reached the constitutional question. See 118 S.Ct. at 1721 (Rehnquist, C.J., concurring) (noting that the Court had correctly decided the question on which certiorari was granted); id. at 1721-22 (Kennedy & O'Connor, JJ., concurring) (explaining the objective character of substantive due process analysis); id. at 1722-23 (Breyer, J., concurring) (noting that district courts retain "flexibility, in appropriate cases, to decide § 1983 claims on the basis of qualified immunity"); id. at 1723 (Stevens, J., concurring in the judgment) (concurring on qualified immunity grounds); id. at 1723-26 (Scalia & Thomas, JJ., concurring in the judgment) (departing from the subjective aspects of substantive due process analysis but reaching the same result on the merits of the constitutional question). Although Justice Breyer's concurring opinion noted that district courts retain discretion to decide § 1983 cases on qualified immunity grounds in appropriate situations, this is entirely consistent with my reading of footnote five. In my view, which I discuss below, Sacramento establishes a general rule requiring resolution of the constitutional question in § 1983 cases, but still leaves lower courts free to depart from that rule in limited situations where they can articulate a persuasive reason for doing so