**UNITED STATES of America,**
**Appellee,**

**v.**

**Jon TOMASI, aka John Tomasi,**
**Defendant–Appellant,**

Jimmy Tomasi, aka James Tomasi,
and Frank Barrett, aka Skip
Barrett, Defendants.

Docket No. 00–1303.

United States Court of Appeals,
Second Circuit.

Argued: May 19, 2001.

Decided: Dec. 03, 2002.

· Tristram J. Coffin, Assistant U.S. Attorney, District of Vermont (David V. Kirby, U.S. Attorney, on the brief), for Appellee.

James M. Dingley, Roesler, Whittlesey, Meekins & Amidon, Burlington, Vermont, for Defendant–Appellant Jon Tomasi.

Before LEVAL, SACK, and SOTOMAYOR, Circuit Judges.

LEVAL, Judge.

Defendant Jon Tomasi (Tomasi) appeals a sentence imposed by the United States District Court for the District of Vermont (William K. Sessions III, *J.*), after Tomasi's plea of guilty during trial to distribution of heroin in violation of 21 U.S.C. § 841(a)(1). Tomasi contends that the district court erred in figuring his sentence by (a) adding a criminal history point, pursuant to the U.S.S.G. §§ 4A1.1(c) and 4A1.2(c)(1)(A), for a state court conviction on which Tomasi was sentenced to 0 to 30 days of imprisonment, suspended, with an indefinite period of probation that was maintained by the court for more than three years; (b) relying on the testimony of a drug addict in determining the quantity of heroin; and (c) denying defendant a minor role reduction pursuant to U.S.S.G. § 3B1.2. We affirm.

### Background

Tomasi was tried in December 1999, along with co-defendants Frank Barrett and Jimmy Tomasi (the appellant's cousin), on charges related to the distribution of heroin. On the third day of trial, Tomasi pled guilty to distribution of heroin in violation of 21 U.S.C. § 841(a)(1). The co-defendants also pled guilty.

Tomasi's Presentence Report (PSR) recommended a base offense level of 20 for 40–60 grams of heroin, *see* U.S.S.G.

§ 2D1.1(c)(10), minus two points for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, for a total offense level of 18. The PSR calculated a total of 46.75 grams of heroin: 10.75 grams based on Tomasi's sales of heroin to two witnesses, and an additional 36 grams based on Tomasi's participation with Barrett in drug-purchasing trips. In calculating the 36 gram figure, the PSR relied on the trial testimony of Diane Hulphers, the girlfriend of co-defendant Barrett and a drug addict, who stated that Barrett and Tomasi made re-supply trips approximately twice a week during the summer of 1997, and that during this time period she would see Barrett with six or eight bundles of heroin at a time.[1]

Tomasi's criminal history score was calculated at seven points, placing the defendant in criminal history category IV. One of the seven points came from a Vermont state conviction on September 12, 1989, for driving with a suspended license and giving false information to a police officer ("Vermont conviction"). For that offense, the Vermont state court had sentenced Tomasi to 0–30 days, suspended, with an indefinite term of probation that was continued by the sentencing court for over three years before he was discharged.

At Tomasi's sentencing hearing, Judge Sessions indicated that he was interested in "developing a sentence that would encourage this defendant to participate in the 500 hour drug and alcohol rehabilitation program," but that he did not intend to impose a sentence that was longer than necessary to get the defendant through that program. The Court rejected Tomasi's argument that the Vermont conviction should not result in a criminal history point under U.S.S.G. §§ 4A1.1(c) and 4A1.2(c)(1)(A). Under these provisions, a criminal history point is added for each prior sentence involving less than 60 days of imprisonment, but misdemeanors and petty offenses of specified categories (including Tomasi's 1989 Vermont conviction) are not counted under § 4A1.2(c)(1)(A) unless they resulted in a sentence of "a term of probation of at least one year or a term or imprisonment of at least thirty days." U.S.S.G. § 4A1.2(c)(1)(A). Because Tomasi had served over a year on probation, the Court concluded the point should be added. Tomasi contests that decision on appeal. The Court also rejected the defendant's argument that Hulpher's testimony was too vague to be reliable, noting that 40–60 grams "is a conservative estimate of what this defendant was involved in." Finally, the Court found that the defendant was sufficiently actively involved in the offense that he was not entitled to a minor-participant adjustment. Using an offense level of 18 and criminal history category IV, the Court sentenced the defendant to 41 months of imprisonment—at the bottom of the Guidelines range of 41 to 51 months—followed by three years' supervised release.

## Discussion

We address the question whether in sentencing the court properly added a criminal history point placing the defendant in Criminal History Category IV by reason of his Vermont conviction. U.S.S.G. § 4A1.2(c)(1)(A) provides that certain misdemeanor and petty offenses, including driving with a suspended license and giving false information to a police officer, will result in a criminal history point under § 4A1.1(c) only if "the sentence was a term

---

1. The PSR arrived at the 36 gram figure by calculating two trips per week over a twelve week period to purchase six bundles of ten bags—totaling 1,440 bags—where each bag contained the undisputed amount of .025 mg heroin.

of probation of at least one year or a term of imprisonment of at least thirty days."

The defendant's first argument is that the sentence for his Vermont conviction was 0–30 days probation, and that the District Court therefore erred in concluding it involved a year's probation.

We disagree. The defendant's characterization of the sentence does not conform to its description in the record. The record below does not contain the exact text of the Vermont sentence. The District Court relied on the summary in the Presentence Report, which described the sentence as "0 to 30 days all suspended and probation .... [from which the defendant] was satisfactorily discharged ... on November 26, 1992." We see no basis for reading this as a sentence of up to 30 days *of probation* as Tomasi's counsel suggests. What is clear is that the sentence of "0 to 30 days" was suspended, and that probation was imposed, which lasted for over three years. The governing Vermont statute, under which the sentence was passed, states that the "court may suspend all or part of the sentence and place the person [on probation] ... for such time as it may prescribe in accordance with law *or until further order of court.*" Vt. Stat. Ann. tit. 28, § 205 (2000) (emphasis added). Reading the PSR's summary of the sentence against the governing statute, it is clear that Tomasi's prison term was suspended and that he was placed on probation either for a term that exceeded a year, or for an indefinite term that was maintained in effect for more than a year. That is how the district court read the sentence.

The probationary term began when Tomasi was placed on probation on September 12, 1989, and ended when he was discharged from probation on November 26, 1992. The District Court, relying on the amount of time Tomasi actually served on probation, concluded that "the sentence of probation was of greater than one year," with the consequence that the defendant received one criminal history point.

Tomasi's second argument is that an indefinite term of probation should not be counted as a "term of probation of at least one year," within the meaning of U.S.S.G. § 4A1.2(c)(1), even if the probation is continued for over a year. In *United States v. Rich,* 900 F.2d 582 (2d Cir.1990), we considered the same question. The sentence imposed by the Vermont court in that case was nine to twelve months imprisonment, suspended, with probation until further order of the court. Although we did not decide the issue, we examined arguments on both sides. *See id.* at 585–86. The defendant in *Rich* argued that since the "sentence" is the term of imprisonment or probation imposed by the court, rather than the length of time actually served, § 4A1.2(c)(1)(A) should be interpreted to exclude a specified offense for which an indefinite term of probation is imposed. *See Rich,* 900 F.2d at 585. Rich argued in addition that the Sentencing Guidelines are designed so that criminal history points will take into account the relative severity of prior offenses. *See id.* Section 4A1.2(c)(1)(A) reflects the assessment that certain offenses are serious enough to warrant a point only if the sentence imposed reflects the sentencing court's determination that the offense was relatively serious. *See United States v. Hardeman,* 933 F.2d 278, 282 (5th Cir.1991) ("Section 4A1.2(c) ... uses the penalty imposed as a surrogate for severity in determining whether or not ... the listed offenses should be included in the criminal history score."). Because the actual time served on probation under Vermont's indefinite probation scheme may reflect factors other than the seriousness of the underlying offense—in Rich's case the failure to comply with the terms of his probation—it may not be a

reliable indicator of whether the underlying offense was sufficiently serious to warrant a criminal history point. *See Rich,* 900 F.2d at 585; *cf.* U.S.S.G. § 4A1.2, Application Note 2 (when calculating the length of a prior sentence of imprisonment, "criminal history points are based on the sentence pronounced, not the length of time actually served"). Tomasi adopts the arguments advanced by the defendant in *Rich.*

The government's position in *Rich,* as here, was that the amount of time actually served on probation should be the measure used to determine whether an indefinite term of probation imposed by Vermont for a § 4A1.2(c)(1)(A) offense is a "term of probation of at least one year," resulting in a criminal history point. *See Rich,* 900 F.2d at 585.[2]

■ If the duration of an indefinite probation term were determined by some authority other than the sentencing court (such as the State's department of probation), it might be argued that a duration exceeding a year did not reflect the severity of the sentence as viewed by the sentencing court and therefore should not qualify under § 4A1.2(c)(1). However, under Vermont law it is the sentencing court that decides the duration of an indefinite probation term. As noted above, Section 205 of Title 28, Vt. Stat. Ann., provides that an indefinite term of probation lasts "until further order of the court." And Section 251 provides: "The court placing a person on probation may terminate the period of probation and discharge the person at any time if such termination is warranted by the conduct of the offender

and the ends of justice." Vt. Stat. Ann. tit. 28, § 251. Thus, although the probation term is not specified at the time of the passing of the sentence, nonetheless its duration is set (albeit at a later time) by the sentencing court and can therefore be seen as part of the sentence. We therefore conclude that an indefinite period of probation imposed under Vermont law falls in the category of a "term of probation of at least one year" under § 4A1.2(c)(1) if the sentencing court continues the probation in effect under Section 205 for at least a year.

■ We recognize that under this two-stage sentencing approach, the length of the defendant's probation may reflect facts that had not yet occurred at the time of the imposition of sentence. It is even conceivable that delay in terminating a probation term might result simply from the processing of paperwork in an overburdened criminal justice system. The more likely scenario, however, is that indefinite terms of probation are maintained in effect for more than a year because the sentencing court considered it appropriate from the outset to keep the defendant on probation for more than a year. Furthermore, where a defendant can show that the termination of his probation was delayed beyond a year by bureaucratic inefficiency or by factors that arose after the imposition of the sentence, the defendant could seek a departure on that basis.

■ We believe it is the best interpretation of the interface between § 4A1.2(c)(1)(A) and the Vermont sentencing law that the duration of an indefinite

---

2. In response to the defendant's contention that the severity of the sentence should not be judged on the basis of factors arising subsequently that influence the amount of time actually served, the government responds that the Guidelines allow additional criminal history points to be imposed where a defendant's probation is revoked and a new sentence is

imposed, thereby assessing criminal history points for misbehavior while on probation. *See* U.S.S.G. § 4A1.2(k). Where misbehavior extends an indefinite term of probation beyond a year, a criminal history point is similarly appropriate. *See Rich,* 900 F.2d at 585–86.

sentence of probation for purposes of U.S.S.G. § 4A1.2(c)(1)(A) is the duration of the period for which the sentencing court continues the probation in effect.[3] *See* Vt. Stat. Ann. tit. 28, § 255 ("Upon the termination of the period of probation or the earlier discharge of the probationer in accordance with section 251 of this title, the probationer . . . shall have satisfied his

**3.** Another possible analysis, drawing an analogy from Application Note 2, would be that every indeterminate probation sentence capable of lasting for at least a year must be considered a "term of probation for at least one year," regardless whether the sentencing court terminated the probation after only a few days. We reject that reading. It does not apply literally to our question, because the provision of Application Note 2 requiring that "the length of a sentence . . . [be] the stated maximum" by its terms applies only to "a sentence of imprisonment." See U.S.S.G. § 4A1.2, Application Note 2. ("[T]he length of *a sentence of imprisonment* is the stated maximum.") (emphasis added). A sentence of probation is not a sentence of imprisonment. Especially given that under Vermont law probation sentences are indeterminate and their duration is set by the sentencing court, we believe the purpose of § 4A1.2(c)(1)(A) is better reflected by deeming the probation sentence to be for the term of its actual duration, as set by the sentencing court, rather than for its maximum possible duration at the time the sentence was imposed. The interpretation we reject would treat all indeterminate probation sentences as being of maximum severity, even where the sentencing court believed that the particular offense was so slight that it properly merited only a few days of probation.

**4.** Judge Sotomayor contends that this is an advisory opinion and asserts that "judges should not . . . reach[ ] out to decide issues not squarely before them." The issue, however, has been squarely presented by the briefs. Tomasi expressly argued that he should not have received a criminal history point under U.S.S.G. § 4A1.2(c)(1)(A) based on the actual duration of over a year of a probationary period that could have been discharged in less than a year. Our ruling is not advisory.

Judge Sotomayor correctly asserts that, as in *Rich*, we could avoid resolving the issue by relying on the alternate ground of lack of

*sentence* for the crime.") (emphasis added). Under this view, an indefinite term of probation would be "a term of probation of at least one year" if the sentencing court continued the probation for at least one year.[4]

 We may more easily dispose of the defendant's remaining contentions.

prejudice. She then argues that courts "have a duty to refrain from deciding issues where resolution is not necessary to the disposition of a case." We disagree.

Without doubt there are circumstances in which courts find it more prudent and advisable (or simply easier) to avoid deciding a squarely presented question by relying on an available alternative ground. Perhaps another case will present the question more clearly. Perhaps in another litigation the court will receive more helpful briefing. Perhaps longer experience under the governing set of rules will clarify what the answer should be. Perhaps an administrative agency with ultimate responsibility to regulate the area will soon resolve the question by promulgating interpretive commentary or a clearer rule. Judge Sotomayor is certainly correct that at times courts are well advised to avoid an issue presented in litigation by relying on an alternative ground.

But there is no principle of law or jurisprudence to the effect that such avoidance is required. In some circumstances it is the better course to decide, rather than avoid, a question presented. Here, we are told that Vermont district judges, along with prosecutors, defense lawyers, probation officers, and defendants, have a need to know how this ambiguous provision of the sentencing guidelines should affect the sentencing of defendants who have served prior indeterminate probation terms under Vermont's unusual sentencing law. That consideration seems to us to furnish good reason for resolving, rather than avoiding, the question.

It is true that twelve years ago in deciding *Rich*, we "deem[ed] it inadvisable to settle this Guidelines dispute, which would require us to interpret the Guidelines in a question the Sentencing Commission apparently has not yet considered." *Rich*, 900 F.2d at 586. We therefore, while calling this issue to the Commission's attention, "decline[d] to settle" it. *Id.* That it was

We find no error in the district court's determination that Hulphers's testimony was sufficiently reliable and definite to sustain an attribution of 36 grams of heroin.[5] Because "assessing the credibility of witnesses is distinctly the province of the district court ... we will not lightly overturn such assessments." *United States v. Beverly*, 5 F.3d 633, 642 (2d Cir.1993). Moreover, in light of Tomasi's frequent drug-buying trips, we cannot say that the district court abused its discretion by declining to grant a minor role adjustment. *See* U.S.S.G. § 3B1.2; *United States v. Olvera*, 954 F.2d 788, 793 (2d Cir.1992) ("a district court's judgment about a particular defendant's degree of participation will not be disturbed on appeal unless clearly erroneous").

Affirmed.

SOTOMAYOR, Circuit Judge, concurring in the judgment.

The majority takes it upon itself to resolve a question that it need not reach in order to dispose of the present case. Moreover, it does so even though this Court has previously held that we should not reach the merits of this very Sentencing Guidelines issue unless we first conclude that the defendant received a higher sentence than he would have received had the criminal history score been calculated correctly. The district court here clearly indicated that it would have sentenced the defendant to 41 months imprisonment with or without the addition of a criminal history point. Because I would abide by our decision in *United States v. Rich*, 900 F.2d 582 (2d Cir.1990), that the application of U.S.S.G. § 4A1.2(c)(1) to an indeterminate term of probation should not be decided unless it is necessary to do so, I would affirm the sentence imposed by the district court on the limited ground that the defendant suffered no prejudice from the alleged sentencing error.

In resolving the question of whether the district court properly calculated the de-

---

wise to refrain from deciding the Guidelines issue in 1990 when the Guidelines were but three years old does not necessarily mean it remains wise to avoid deciding it today. Since then, twelve years have passed, and the Commission has still not addressed the question. That experience seems to give greater reason, rather than less reason as Judge Sotomayor argues, to now resolve this uncertainty in the federal sentencing law for the benefit of Vermont litigants and Vermont federal courts. If our interpretation of U.S.S.G. § 4A1.2(c)(1)(A) is not to the Commission's liking, the Commission will be free to promulgate commentary rejecting our interpretation and definitively clarifying the resolution.

Finally, Judge Sotomayor cites our decision in *Horne v. Coughlin*, 178 F.3d 603, 606 (2d Cir.1999), but we disagree with her understanding of it. In *Horne*, we followed the well established rule that courts should avoid unnecessarily deciding *constitutional* questions. *See Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316,

343–44, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999); *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944). That principle does not support Judge Sotomayor's argument; to the contrary, it undermines it. That principle distinguishes constitutional adjudication from adjudication interpreting lesser statutes and rules, and is based on the special status and role of the Constitution. *See Rescue Army v. Municipal Court of Los Angeles*, 331 U.S. 549, 571, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947). It seeks to restrain constitutional decision making in part because of "the delicacy of that function" and because of "the comparative finality" of any erroneous interpretation. *Id.* Those concerns are not present with respect to interpretation of the Sentencing Guidelines, and there is no comparable principle that requires courts to avoid unnecessarily deciding issues that arise under the Guidelines.

**5.** The defendant does not contest the other 10.75 grams, which were based on sales he made.

fendant's criminal history score under U.S.S.G. § 4A1.2(c)(1), the majority neglects to mention that the panel previously faced with this precise issue "deem[ed] it inadvisable to settle this Guidelines dispute" absent a showing of prejudice to the defendant, because it "would require us to interpret the Guidelines on a question the Sentencing Commission apparently has not yet considered." *Rich,* 900 F.2d at 586. Rather than addressing the application of § 4A1.2(c)(1) to the facts before it, the *Rich* court determined that the better course of action was to remand to the district court for clarification of whether the addition of the criminal history point had any effect on the sentence actually imposed. *Rich* is in accord with this Court's general practice of refusing to resolve a Guidelines dispute if the same sentence would have been imposed under all potentially applicable Guidelines ranges. *See United States v. Bermingham,* 855 F.2d 925, 935–36 (2d Cir.1988) (remanding to the district court for a clarification of whether there was prejudice to the defendant rather than reach the merits of a Guidelines dispute).

Despite the fact that, as in *Rich,* Tomasi cannot show prejudice from the alleged sentencing error, the majority nonetheless reaches out to decide how an indefinite term of probation should be treated under § 4A1.2(c)(1) for purposes of determining a defendant's criminal history score. In so doing, the majority abandons a well-established principle of sound, responsible jurisprudence—that courts have a duty to refrain from deciding issues whose resolution is not necessary to the disposition of a case. *See Batson v. Kentucky,* 476 U.S. 79, 111 n. 5, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (Stevens, J., concurring) ("[T]he Court should only address issues necessary to the disposition of the case or petition."); *cf. Anderson v. United States,* 417 U.S. 211, 218, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974) (directing that it is "inadvisable ...

to reach out ... to pass on important questions of statutory construction when simpler, and more settled, grounds are available for deciding the case at hand").

Indeed, while in *Rich* it was not clear on appeal whether the defendant had suffered prejudice, the record in the case before us conclusively shows that Tomasi's sentence was not affected by the criminal history calculation. If the district court had not added a criminal history point, the defendant would have been exposed to a Guidelines range of 33–41 months; with the criminal history point, the district court calculated the applicable range as 41 to 51 months. The district court specifically stated that if the defendant were subject to a 33–41 month sentence, "[t]he Court still would impose the [41 month] sentence because that's the sentence that could give this defendant a reasonable chance of getting in the 500 hour program." [A 319] We have urged district courts to provide just this type of detailed sentencing rationale so that we may avoid reaching tangled Guidelines issues in the interest of the "efficient functioning of the guideline system." *Bermingham,* 855 F.2d at 935.

Because the addition of the criminal history point had no effect on the sentence the defendant ultimately received, *Rich* dictates that we should "decline to render a potentially advisory opinion broadening or narrowing the scope of § 4A1.2(c)(1)." 900 F.2d at 586; *cf. Ass'n of Mexican-American Educators v. California,* 231 F.3d 572, 590 (9th Cir.2000) (en banc) ("Because we have concluded that Title VII applies ..., we need not consider whether Title VI also applies.... Accordingly, we decline to issue an advisory opinion on the applicability of Title VI."); *Horne v. Coughlin,* 178 F.3d 603, 606 (2d Cir.1999) ("The question arises whether limited, burdened judicial resources should properly be diverted from cases that *require* adjudication to difficult and time-

consuming advisory opinions on questions that will have no effect on who wins or loses the litigation."). There is no basis for a departure from the principle of judicial restraint in the present case. Certainly the majority's resolution of the § 4A1.2(c)(1) issue cannot be justified by the need to provide guidance to district courts, for such an exception would swallow the general rule.[1] While clarity in the law is always to be desired, judges should not indulge themselves by reaching out to decide issues not squarely before them in order to accomplish this result.

---

1. Even if this were a reasonable grounds for departure from this rule, the majority's conclusion, *supra* note 4, that the fact that "Vermont district judges, along with prosecutors, defense lawyers, probation officers, and defendants, have a need to know how this ambiguous provision of the sentencing guidelines" affects sentencing provides "good reason for resolving, rather than avoiding, the question" finds no support in the record. The district court's colloquy at sentencing evidences no need for guidance on this issue, and indeed, the government argues on appeal that "[f]or over a decade, federal judges in the District of Vermont interpreting this guideline have looked to the length of time actually served on probation under such indefinite probationary sentences to determine whether or not a given conviction should be counted in criminal history under the Guidelines." Appellee Br. at 8–9.