UNITED STATES of America,
Appellee,

v.

Walter BORREGO; Dina Maldonado; Juan Jose Bouret; Miguel Anders Pena; Lydia Colon; Angel Luis Font, Defendants,

Juan Figuerate, Defendant–Appellant.

Docket No. 03–1473.

United States Court of Appeals,
Second Circuit.

Argued: June 21, 2004.

Decided: Oct. 29, 2004.

Robin W. Morey, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Mark A. Racanelli, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Catherine M. Foti & Andrew M. St. Laurent (Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C.), New York, NY, for Defendant–Appellant.

Before: LEVAL, CABRANES, and WALLACE, Circuit Judges.*

LEVAL, Circuit Judge.

Juan Figuerate appeals from the judgment of the United States District Court for the Southern District of New York (Victor Marrero, *J.*), rendered on July 31, 2003, sentencing him primarily to 240 months incarceration. Figuerate pleaded guilty to conspiracy to distribute more than one kilogram of heroin. The district court granted Figuerate a downward departure pursuant to § 5K1.1 of the United States Sentencing Guidelines ("U.S.S.G.") for his cooperation with the government. The court declined to resolve several disputed sentencing issues after determining that the resolution of those issues would not affect the ultimate sentence. On appeal, Figuerate argues that we must remand to compel resolution of the unresolved issues. We reject the defendant's argument and affirm the judgment.

## BACKGROUND

Juan Figuerate was indicted on June 7, 1990, for conspiracy to distribute more than one kilogram of heroin, in violation of 21 U.S.C. § 846, and possession with intent to distribute heroin, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 812, 841(a)(1), and (b)(1)(C). Figuerate entered into a cooperation agreement with the government, and on August 3, 1990, pleaded guilty to the conspiracy count. Shortly after the cooperation agreement was made, he was released on bail to assist the government in its investigations. Figuerate worked as a confidential informant and rendered valuable assistance. However, he developed an alcohol problem, which rendered further cooperation useless.

Sentencing was scheduled for November 22, 1991. On November 19, 1991, the government submitted a motion under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) asking the district court to depart downward from the otherwise applicable guideline range in light of Figuerate's cooperation. Prior to the imposition of sentence, however, Figuerate fled, and he remained a fugitive for almost eight years. He was rearrested in Pennsylvania on November 12, 1999, on new narcotics and weapons charges.

Figuerate was then returned to the Southern District of New York for further proceedings in this case. Judge Marrero directed the United States Probation Office to prepare an updated Presentence Investigation Report ("PSR"). The PSR proposed that Figuerate be found responsible for the distribution of more than eight, but less than ten, kilograms of heroin, resulting in a base offense level of 34. The PSR went on to suggest a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) because of the defendant's awareness of his organization's use of firearms, a three-level enhancement pursuant to § 3B1.1(b) because the defendant was a supervisor of criminal activity involving five or more participants, a two-level enhancement pursuant to § 3C1.1 for obstruction of justice because of the defendant's prolonged flight, and denial of any reduction under § 3E1.1 for acceptance of responsibility because the defendant had continued his criminal conduct while a fugitive. The PSR thus recommended a net offense level of 41, a Criminal History Category of IV, and a sentencing guideline range of 360 months to life imprisonment. The government submitted a letter reaffirming its earlier § 5K1.1 motion for

* The Honorable J. Clifford Wallace, United States Court of Appeals for the Ninth Circuit, sitting by designation.

downward departure based on the defendant's substantial assistance, while asking the court at the same time to take into account his flight and violation of the cooperation agreement.

Figuerate argued (i) against the obstruction of justice adjustment on the ground that obstructive conduct affecting sentencing was not specifically cited in the version of the Guidelines in effect as of the date of his offense, November 1, 1989, but was later included in an amendment effective November 1, 1990; (ii) that he should receive credit for acceptance of responsibility notwithstanding his flight; (iii) that his offense level on the basis of those adjustments should be 37 with a sentencing range of 292–365 months, rather than 41 with a sentencing range of 360 months to life; (iv) that in addition to the cooperation departure, he should be granted a downward departure for diminished capacity under § 5K2.13; and (v) that, if he did not merit departure based on diminished capacity alone, he should be granted a "totality of the circumstances" downward departure under § 5K2.0 based on the combination of factors underlying his acceptance of responsibility, substantial assistance, and diminished capacity requests.

After hearing argument on the disputed sentencing issues, the court granted Figuerate a downward departure for his cooperation, and imposed a 240–month prison term without ruling on the disputed issues. Citing *United States v. Shuster,* 331 F.3d 294 (2d Cir.2003), the court explained that it "need not rule on disputed issues ... if the Court concludes that it would still depart to the same sentence regardless of the issues in dispute." Regarding the disputed adjustments, the court noted that it need not rule on them because the sentence imposed was already below the guideline range advocated by the defendant. Regarding the diminished–capacity departure, the court stated that "[s]ince the sentence the Court will now impose would be the same regardless of whether or not the Court would grant Mr. Figuerate's request for a downward departure based on his diminished capacity, the Court will not reach that issue."

Figuerate brought this appeal.

## DISCUSSION

■ The defendant argues that the District Court erred in sentencing him without having decided disputed sentencing guidelines issues. He contends, furthermore, that a ruling in his favor on these issues would have resulted in a shorter sentence. We find no merit in his claims. It is clear the court would have imposed the same sentence regardless of the findings that might have been made on the contested issues.

In *United States v. Shuster,* the sentencing court had found over the government's protest that a requested four-level upward adjustment did not apply, but also added in the alternative that even if the adjustment did apply it would not affect the ultimate sentence because the court would have departed downward by the same amount. The government appealed, contesting the adjustment ruling. *Shuster,* 331 F.3d at 295–96. We ruled that because we had "sufficient guidance from the sentencing judge" that the sentence would have been the same in any event, we had no obligation to decide whether the district judge was correct in rejecting the upward adjustment. *Id.* at 297.

*Shuster* relied in part on our reasoning in *United States v. Bermingham,* 855 F.2d 925 (2d Cir.1988), an early Guidelines case. In *Bermingham,* the defendant contended that his offense level should be level four, whereas the government argued for six. The sentencing court resolved the dispute

in favor of the government, but sentenced the defendant to nine months, a term which fell within the applicable range under either level four or level six. *Bermingham,* 855 F.2d at 929–30. Reviewing the sentence on appeal, we concluded that "disputes about applicable guidelines need not be resolved where the sentence falls within either of two arguably applicable guideline ranges and the same sentence would have been imposed under either guideline range." *Id.* at 931. But because it was not clear that the district court would have imposed the same sentence under either offense level, we remanded for clarification. *Id.* at 935–36.

■ As we noted in *Shuster,* we have applied the reasoning in *Bermingham* in various other contexts, noting that when the dispute at issue has no bearing on the determination of the sentence duration, district courts need not rule on disputes concerning offense level adjustments, *United States v. Tracy,* 12 F.3d 1186, 1203 (2d Cir.1993); *United States v. Garcia,* 936 F.2d 648, 656 (2d Cir.1991); the appropriate offense guideline, *United States v. McHugh,* 122 F.3d 153, 157–58 (2d Cir. 1997); and the appropriate criminal history category, *United States v. Larson,* 112 F.3d 600, 606 (2d Cir.1997); *United States v. Mayo,* 14 F.3d 128, 132 (2d Cir.1994). Thus, it has long been the view of this Court that disputed sentencing issues need not be resolved where the sentencing court (i) could, consistent with the Guidelines, have imposed the same sentence regardless of the outcome of the dispute, and (ii) indicates that it would have done so.

In the present case, the sentencing judge could have imposed a sentence of 240 months imprisonment regardless of the outcome of the disputed sentencing issues, and made clear that the sentence would have been the same regardless. The PSR recommended a guideline range

of 360 months to life. The defendant argued that the appropriate range was 292–365 months because the PSR improperly withheld credit for acceptance of responsibility and improperly added points for obstruction of justice. Even accepting all of defendant's arguments on the adjustments, the court would have been authorized to impose a prison term of anything under 365 months. Similarly, granting defendant a downward departure for diminished capacity, in addition to one for cooperation, would have justified a sentence at any level below 365 months. The sentence imposed, of 240 months, was undoubtedly one the court could have imposed if it had accepted all of defendant's arguments. Judge Marrero made clear furthermore that he would have imposed this same sentence regardless of the resolution of the disputed issues. That being the case, to require the court to rule on issues which would have no effect on the sentence would merely require performance of a meaningless academic exercise.

There is no meaningful difference between this case and *Shuster* in that regard. In *Shuster* it was the appeals court which was absolved of the obligation to pass on the correctness of an adjustment decision by the district court because the decision had no effect on the sentence imposed. Here it is the sentencing court which was absolved of the obligation to pass on disputed sentencing issues—again because they had no effect on the ultimate sentence. The governing principle in both cases is that a finding that will have no effect on the adjudication need not be made.

The defendant argues that this principle can have no application where the defendant may receive the benefit of both a contested adjustment and a downward departure. He contends one cannot know where a sentence based on downward de-

parture will end up without knowing from what point the departure was taken. He cites cases in which we remanded sentences where the court had erred in its calculation of the appropriate guideline range before departing below that range, because it was not clear that the court would have given the same ultimate sentence if it had instead departed from the correct lower range. *See United States v. Moon,* 926 F.2d 204, 210 (2d Cir.1991) (remanding a sentence departing to 48 months from guideline range of 78–97 months where the correct guideline range was 63–78 months); *United States v. McCall,* 915 F.2d 811, 814 n. 3 (2d Cir. 1990) (remanding a sentence departing to 108 months from guideline range of 151–188 months where the correct guideline range was 87–108 months). This argument oversimplifies. It is true that in some cases a sentencing judge structures a downward departure as a reduction by a specified number of levels, or months, from the otherwise governing offense level. In such cases, the sentencing judge may explain, "By reason of the defendant's cooperation, under U.S.S.G. § 5K1.1, I find it appropriate to deduct 4 levels," or alternatively, "I find it appropriate to deduct 60 months." It is true that in such cases, the sentencing court's ruling on the defendant's entitlement to prevail on adjustment disputes, such as disputes about acceptance of responsibility or obstruction of justice, will affect the ultimate sentence after giving effect to the departure. In such cases the sentencing court may not have given "sufficient guidance" for us to say that the dispute made no difference to the ultimate sentence. But departure may also be conceived in a manner that departs more completely from the structure of the

Guidelines. This is particularly likely to occur when the factors that justify the departure are thought by the sentencing judge to have a dominant importance which eclipses the adjustments specified by the Guidelines. It appears that is what the court did in this case.

■ Having considered all the pertinent factors in this unusually complex case, and particularly the appropriateness of a substantial downward departure for cooperation, the court determined that the sentence should be 240 months—no more, no less. The court made clear that the duration of the sentence would not be changed either by different findings on the disputed adjustment issues, or by granting a departure for diminished capacity as well.[1] So long as a departure is permissible, and the extent of departure is not "unreasonable" with reference to the governing mandates of sentencing, *see* 18 U.S.C. § 3742(e)(3), it is within the court's power to impose. The court is not obliged to waste its time making findings that would have no effect on the sentence or on the appeal. We have no reason to remand.

### CONCLUSION

The judgment of the district court is affirmed.

The mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004), and *United States v. Fanfan,* —— U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004). Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the

---

**1.** Because the motion for a totality of the circumstances departure was premised on the same facts as the motion for an acceptance of responsibility adjustment and a diminished

capacity departure, it is clear that, had the court granted a totality of the circumstances departure, it still would not have granted a sentence other than 240 months.

mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendant's sentence until after the Supreme Court's decision in *Booker* and *Fanfan.* In that regard, the parties will have until fourteen days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan.*