UNITED STATES OF AMERICA,

v.

Juan FIGUERATE, Defendant.

No. 90 CR 0370.

United States District Court,
S.D. New York.

Jan. 5, 2006.

*DECISION AND ORDER*

MARRERO, District Judge.

Defendant Juan Figuerate ("Figuerate") was sentenced by this Court to 240 months of incarceration upon his guilty plea to conspiracy to distribute more than one kilogram of heroin. On appeal of his sentence, the United States Court of Appeals for the Second Circuit affirmed the Court's judgment but withheld its mandate in the case pending the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)

("Booker"). See United States v. Borrego, 388 F.3d 66 (2d Cir.2004). In light of the Supreme Court's ruling in Booker the Second Circuit remanded the case to this Court for further proceedings in conformity with United States v. Crosby, 397 F.3d 103 (2d Cir.2005). Defendant Juan Figuerate then filed the instant Motion for Resentencing Pursuant to United States v. Crosby. The Government opposed the motion.

On a Crosby remand the Court is directed to determine, "based on the circumstances at the time of the original sentence, whether to resentence, after considering the currently applicable statutory requirements as explicated in [Booker and Crosby]." Id. at 120 (emphasis in original). Having considered the parties' submissions, the relevant materials of record in this case and applicable case law and statutory authorities as enunciated in Booker and Crosby, the Court denies Figuerate's motion.

Figuerate, arguing that his sentence warrants substantial reduction, presents two theories in support of his motion: (1) that application of all the sentencing considerations enumerated in 18 U.S.C. § 3553(a) (" § 3553(a)") would have significantly lowered his sentence as that provision would have allowed the Court to fully consider Mr. Figuerate's personal characteristics, and (2) that a post-Booker Sentencing Guidelines calculation would pro-duce a lower Guidelines range by reason of enhancements the Court adopted to which Figuerate contends he did not admit in his plea allocution and that the Government has not proved before a jury beyond a reasonable doubt. The Court rejects both grounds as reasons justifying resentencing in this case.

At the time of sentencing, Figuerate faced a sentence that, under the applicable provisions of the Guidelines' the Court endorsed, ranged from 360 months to life imprisonment, with a mandatory minimum of twenty years. The Probation Office recommended 360 months. The Court sentenced Figuerate to 240 months, which equates to the mandatory minimum term otherwise applicable. To depart downward to that level, the Court granted the Government's motion to sentence Figuerate outside of the Sentencing Guidelines range in light of the relevant facts set forth in Section 5K1.1(a)(1)-(5) of the Guidelines for providing substantial assistance to the Government in the investigation or prosecution of another offense.[1]

In ruling on Figuerate's instant motion, and determining whether resentencing is warranted in this case, the Court weighed not only the nature and circumstances of Figuerate's offense and his family history and personal characteristics as described in his submission, but also the various other sentencing criteria enumerated in § 3553(a), requiring that the Court consid-

---

1. The Government's motion was filed on November 19, 1991 before Judge Mary Johnson Lowe, who then presided over this case. Figuerate failed to appear for sentencing before Judge Lowe, and spent approximately eight years as a fugitive before he was again arrested in Pennsylvania on narcotics and weapons charges for which he pleaded guilty in state and federal courts. During Figuerate's disappearance the Government proceeded with the trial of the offender against whom Figuerate had agreed to cooperate. Nonetheless, the Government, precluded by applicable case law from withdrawing its prior letter to the Court submitted pursuant to U.S.S.G. § 5K1.1 once it was filed, renewed its downward departure motion. See United States v. Padilla, 186 F.3d 136, 141 (2d Cir.1999). However, the Government pointed out that because of the passage of time it was impossible to assess the extent of any adverse effect Figuerate's unavailability as a witness may have had at that trial. (See Letter from James B. Comey, United States Attorney, to Honorable Victor Marrero, United States District Judge, dated July 3, 2003, at 3.).

er, among other factors: (1) the need for the sentence imposed to (a) "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (b) "afford adequate deterrence to criminal conduct;" (c) "protect the public from further crimes of the defendant," and (d) "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" (2) the kinds of sentence and the sentencing range established for the category of offense and defendant as set forth in the Guidelines; and (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar conduct. 18 U.S.C. § 3553(a).

In this regard, the Court considered as significantly bearing on its ultimate determination several aggravating factors: Figuerate's high-level of culpability in the offense for which he was sentenced by this Court, in that he was a manager of the drug organization involved in the conspiracy, playing a role the Presentence Investigation Report ("PSR") characterized as the "right hand man" of the head of the criminal enterprise; the significant amount of unlawful drugs in which the organization trafficked, of which Figuerate admitted intent to distribute more than one kilogram of narcotics; Figuerate's awareness of the presence and use of weapons in connection with the organization's drug activities; Figuerate's extensive prior criminal record, which included several convictions for crimes involving controlled substances; Figuerate's ongoing failure to rehabilitate and abandon his life of crime despite his relatively high age at the time of the offense for which he was sentenced by this Court; Figuerate's disappearance and status as a fugitive for over eight years; the potentially mitigated value of Figuerate's assistance to the Government in light of his failure to be available as a possible witness at the trial at which he had agreed to testify.

■ In connection with the instant remand, the Court has reviewed, in light of *Booker* and *Crosby* and as comprising the circumstances before the Court at the time of Figuerate's original sentencing, all of the preceding considerations and other facts derived from Figuerate's PSR and from Figuerate's allocution to the crime to which he pled guilty, as well as the sentencing range recommended by the Guidelines and the Government's motion for a departure pursuant to U.S.S.G. § 5K1.1. On the basis of that assessment, the Court finds that the sentence of 240 months the Court imposed on Figuerate was reasonable, in that it was and continues to be "sufficient, but not greater than necessary" to comply with the sentencing purposes articulated in § 3553(a). Thus, the Court concludes that had it applied the sentencing rules enunciated in *Booker* at the time of the original sentencing, it would not have imposed a "nontrivially different sentence" on Figuerate. *Crosby,* 397 F.3d at 118.

Figuerate argues, however, that the Sentencing Guidelines calculation the Court employed was constitutionally flawed in that it considered enhancements not permissible in light of *Booker*. Specifically, Figuerate contends that the enhancements for the drug quantities the PSR indicated were involved in the conspiracy, his supervisory role in the narcotics organization, and his knowledge of the possession or use of firearms in connection with the criminal enterprise's activities, entailed facts determined by the Court by a preponderance of the evidence based on the PSR, and therefore neither admitted by Figuerate nor found by a jury beyond a reasonable doubt.

■ Figuerate's argument that he did not admit to the facts embodied in the enhancements applied by the Court is grounded on two contentions. First, he maintains that when he stated during his plea allocution that he understood and "agreed" with the Government's recitation of what the evidence that it would present at a trial of the charges against Figuerate would show, he meant to convey not an admission of the facts set forth in the summary proffered, but merely a matter-of-fact acknowledgment that such would be the particular evidence the Government would introduce if the case were tried. The Government's summary of its evidence included reference to Figuerate's role as the "top person" who coordinated the various activities at the heroin spot involved in the conspiracy, and to the possession of a handgun by members of the conspiracy in relation to the drug trafficking crimes charged. (*See* Transcript of Hearing before The Honorable Michael B. Mukasey, *United States v. Borrego,* No. 90 Cr. 370, on August 3, 1990, at 16–19.)

The Court rejects Figuerate's characterization of what he claims he understood and agreed during this aspect of his plea allocution. The Court finds that view unpersuasively technical and strained to a point bordering on disingenousness. What the Government represented it was summarizing, and the precise question the Court then asked Figuerate whether he understood and "agreed" with, entailed what the Government's evidence at trial "will show." The question put to Figuerate could not, from an objectively reasonable perspective, be deemed to ask merely for concurrence, as a non-incriminating factual matter, that the Government would indeed introduce particular items of evidence if the case were tried. If Figuerate's argument were credited, it would be utterly pointless for a Court to ask a defendant during a plea allocution whether he understands and agrees with the Government's recitation of the evidence it would proffer against the defendant at a trial and with what the Government represents that evidence "will show."

■ Second, Figuerate argues that he did not admit to factual statements in the PSR even if he did not specifically dispute them at the time of his original sentencing. The PSR provided to Figuerate made specific references to the quantities of drugs attributable to the conspiracy as being between eight and ten kilograms of narcotics, to Figuerate's supervisory role in the narcotics organization and to his awareness of the presence of firearms in relation with the enterprise's criminal activities. Figuerate did not raise any specific objections to these factual assertions, and contends that his failure to do so does not constitute an admission of the matters for Sixth Amendment purposes.

Pre-*Booker,* substantial authority existed for the proposition that "At sentencing, the Court … may accept any undisputed portion of the pre-sentence report as a finding of fact." Fed.R.Crim.P. 32(i)(3). *See United States v. Rizzo,* 349 F.3d 94, 99 (2d Cir.2003); *United States v. Borst,* 62 F.3d 43, 47 (2d Cir.1995); *United States v. Streich,* 987 F.2d 104, 107 (2d Cir.1993). Post-*Booker,* a number of Courts that have examined the issue continue to hold that a fact stated in a PSR not specifically objected to by the defendant is deemed admitted. *See United States v. McCully,* 407 F.3d 931, 933 (8th Cir.2005); *United States v. Shelton,* 400 F.3d 1325, 1330 (11th Cir. 2005); *see also United States v. Fagans,* 406 F.3d 138, 142 (2d Cir.2005); *United States v. Graham,* 413 F.3d 1211, 1221 n. 11 (10th Cir., 2005). *But see United States v. Bass,* 411 F.3d 1198, 1204 n. 7 (10th Cir.2005).

The Court finds this authority compelling, but concludes that it need not reach

this question in order to determine whether resentencing is warranted. At Figuerate's initial sentencing proceeding, the Court granted the government's 5K1.1 motion and imposed a non-guidelines sentence of 240 months. As Figuerate's submission recognizes, the Court would have been free, under an advisory guidelines regime, to consider the aggravating conduct described in the PSR and to conclude that the same initial range was the appropriate starting point for the sentencing determination.[2] Furthermore, bearing in mind the particular aggravating circumstances in this case, described above, the Court concludes that even if initially the permissible sentencing range under an advisory guidelines scheme had been substantially lower after consideration of any applicable downward departures, the Court would not have imposed a materially different original sentence under the sentencing regime outlined in *Booker*.[3] The Court finds that the sentence originally imposed was reasonable in light of all of the factors enumerated in Section 3553(a), and after appropriate weighing of the Sentencing Guidelines. Figuerate has not persuaded the Court that the sentence

originally imposed upon him would have been non-trivially different had the Guidelines been understood to be only advisory at the time of his original sentencing.

## ORDER

For the reasons set forth above, Mr. Figuerate's request for resentencing is DENIED.

## SO ORDERED.

---

**2.** The Second Circuit has made repeated post-*Booker* assertions that "[j]udicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker.*" *United States v. Garcia,* 413 F.3d 201, 220 n. 15 (2d Cir.2005); *see also United States v. Gonzalez,* 407 F.3d 118, 125 (2d Cir.2005) (stating that the sentencing court retains the "authority—that endures post-*Booker*—to resolve disputed facts by a preponderance of the evidence when arriving at a Guidelines Sentence.")

**3.** In reaching this conclusion, the Court notes that, by reason of its granting of the Government's 5K1.1 motion, the Court was not bound by the Guidelines range at the original sentencing proceeding. Furthermore, in its original sentencing determination, the Court declined to decide certain motions for Guidelines adjustments, as it concluded that the outcome of those disputes would not alter its

decision that a 240 month sentence was appropriate in this case. The Court's decision to leave unresolved the disputed sentencing issues was the subject of Figuerate's appeal to the Second Circuit. The Second Circuit rejected Figuerate's contention that the Court was obligated to decide the disputed sentencing questions based on Figuerate's argument that one cannot know where a sentencing based on a downward departure will end up without knowing from what point the departure was taken. *See Borrego,* 388 F.3d at 69–70. In upholding this Court's sentencing determination, the Second Circuit noted that: "[The district] court determined that the sentence should be 240 months, no more, no less. The court made clear that the duration of the sentence would not be changed either by different findings on the disputed adjustment issues, or by granting a departure for diminished capacity as well." *Id.* at 70.